| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| James R. Selth - Bar #123420<br>WEINTRAUB ZOLKIN TALERICO & SELTH, LLP<br>11766 Wilshire Boulevard, Suite 450<br>Los Angeles, CA 90025<br>Telephone: (310) 207-1494<br>Facsimile: (310) 442-0660<br>E-mail: jselth@wztslaw.com | |

☒ *Attorney for:* Debtor, LISA M. FANCHER

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA - SAN FERNANDO VALLEY DIVISION

| In re:<br><br>LISA M. FANCHER,<br><br><br><br><br><br>Debtor(s). | CASE NO.: 1:23-bk-10324-VK<br><br>CHAPTER: 13<br><br>**NOTICE OF OBJECTION TO CLAIM**<br><br>DATE: 07/11/2023<br>TIME: 11:00 am<br>COURTROOM: 301<br>PLACE: 21041 Burbank Blvd., Woodland Hills, CA 91367<br><br>(see Supplemental Notice of Hearing to Be Held Remotely Using ZoomGov Audio and Video) |
|---|---|

1. TO *(specify claimant and claimant's counsel, if any)*: _____
   LOUIS MAYORGA, AND ATTORNEY EDUARDO MARTORELL

2. NOTICE IS HEREBY GIVEN that the undersigned has filed an objection to your Proof of Claim (Claim # 11 _____) filed in the above referenced case. The Objection to Claim seeks to alter your rights by disallowing, reducing or modifying the claim based upon the grounds set forth in the objection, a copy of which is attached hereto and served herewith.

3. **Deadline for Opposition Papers**: You must file and serve a response to the Objection to Claim not later than 14 days prior to the hearing date set forth above.

   **IF YOU FAIL TO TIMELY RESPOND IN ACCORDANCE WITH THIS NOTICE, THE COURT MAY GRANT THE RELIEF REQUESTED IN THE OBJECTION WITHOUT FURTHER NOTICE OR HEARING.**

Date: _05/31/2023_

WEINTRAUB ZOLKIN TALERICO & SELTH, LLP
Printed name of law firm

/s/ James R. Selth
Signature

Date Notice Mailed: _05/31/2023_

James R. Selth
Printed name of attorney for objector

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

1  **James R. Selth - Bar #123420**
   **WEINTRAUB ZOLKIN TALERICO & SELTH, LLP**
2  **11766 Wilshire Boulevard, Suite 450**
   **Los Angeles, CA 90025**
3  **Telephone: (310) 207-1494**
   **Facsimile:  (310) 442-0660**
4  **E-mail: jselth@wztslaw.com**

5
   Attorneys for Debtor,
6  LISA M. FANCHER

7

8              **UNITED STATES BANKRUPTCY COURT**

9     **CENTRAL DISTRICT OF CALIFORNIA – SAN FERNANDO VALLEY DIVISION**

10

11 | In re:                          | Chapter 13
12 | LISA M. FANCHER,                 | Bankruptcy No. 1:23-bk-10324-VK
13 |                                  |
14 |              Debtor.             | **OBJECTION TO LATE-FILED PROOF OF**
   |                                  | **CLAIM 11 FILED BY LOUIS MAYORGA;**
   |                                  | **DECLARATION OF JAMES R. SELTH IN**
15 |                                  | **SUPPORT THEREOF**

16 |                                  | Date: July 11, 2023
17 |                                  | Time: 11:00 a.m.
   |                                  | Courtroom: 301 (by ZoomGov)
18

19

20

21

22       **TO THE HON. VICTORIA S. KAUFMAN, CHAPTER 13 TRUSTEE ELIZABETH F.**
23 **ROJAS AND CREDITOR LOUIS MAYORGA:**

24       Please take notice that Chapter 13 Debtor Lisa M. Fancher ("Debtor") hereby files this
25 Objection to the late-filed Proof of Claim (Claim No. 11) filed by Louis Mayorga ("Mr. Mayorga").
26 The Objection to Claim ("Objection") is based on the statement of facts below, the attached
27 Memorandum of Points and Authorities, and on such other argument as may be made by counsel at
28 the time of the hearing.

This Objection is being heard on regular notice pursuant to Local Bankruptcy Rule 9013-1. If you wish to oppose this Objection, you must file a written response with the court and serve a copy of it upon the Debtor's attorney at the address set forth above no less than fourteen (14) days prior to the above hearing date. If you fail to file a written response to this Objection within such time period, the court may treat such failure as a waiver of your right to oppose the Objection and may grant the requested relief.

## I.  STATEMENT OF FACTS

On March 16, 2023, Debtor filed her Chapter 13 Petition, Schedules and Plan with the United States Bankruptcy Court for the Central District of California, San Fernando Valley Division, Case No. 1:23-bk-10324-VK.

Mr. Mayorga was listed in Debtor's Schedule F and a copy of the Notice of Chapter 13 Bankruptcy Case ("Notice") was mailed to his address by the Court on March 18, 2023.  Also receiving a copy of the Notice was Mr. Mayorga's attorney Eduardo Martorell.  A true and correct copy of the Notice with Certificate of Service is attached to the Declaration of James R. Selth ("Selth Dec.") as **Exhibit 1**.  This document is also available on the Court's PACER system in this case as Doc. No. 12.  The Notice sets forth in Section 8 "Deadlines" the deadline of May 25, 2023 for all creditors (except governmental units) to file a proof of claim in the case.

On March 16, 2023, Debtor's counsel James R. Selth served and e-filed a Notice of Stay of Proceedings with the Los Angeles County Superior Court in the lawsuit entitled Louis Mayorga v. Lisa Fancher, Case No. BC643234, a true and correct copy of which is attached to the Selth Dec. as **Exhibit 2**.  The Notice of Stay of Proceedings was served by mail on Mr. Mayorga's attorney of record in the Superior Court case, Eduardo Martorell.

On March 30, 2023, Mr. Martorell filed in the Superior Court case a Declaration of Eduardo Martorell in Support of Plaintiff's Response to Defendant's Status Report Regarding Bankruptcy. A true and correct copy of the caption page of this Declaration is attached to the Selth Dec. as **Exhibit 3**.

On April 27, 2023, Debtor's counsel James R. Selth served a copy of Debtor's Chapter 13 plan on all of her creditors, including Mr. Mayorga and his attorney Mr. Martorell.  This document

1   is available on the Court's PACER system in this case as Doc. No. 15.

2       On May 26, 2023, <u>after the deadline to file proofs of claim had passed</u>, Proof of Claim 11 in

3   the amount of $1,000,000 was filed for Mr. Mayorga by Martorell Law, APC. A true and correct

4   copy of the late-filed Proof of Claim is attached to the Selth Dec. as **Exhibit 4**. Said Proof of Claim

5   was electronically signed on May 26, 2023 and was e-filed with the Court some time after 5:03 p.m.

6   on that date, as set forth in the Selth Dec.

7       As set forth in the Selth Dec., at no time did Mr. Mayorga or Mr. Martorell or any attorney

8   on his behalf request an extension of the deadline to file a proof of claim, either by Motion under

9   Federal Rule of Bankruptcy Procedure 3002(c)(6), or by request to Debtor's counsel.

10      As further set forth in the Selth Dec., neither the Notice mailed by the Court to Mr. Mayorga

11  and Mr. Martorell on March 18, 2023 or the Debtor's Notice of (1) 11 U.S.C. Section 341(a)

12  Meeting, and (2) Hearing on Confirmation of Chapter 13 Plan and Modification of Secured

13  Claim(s), with Copy of Chapter 13 Plan mailed by Mr. Selth's office to Mr. Mayorga and Mr.

14  Martorell on April 27, 2023 was returned as undeliverable.

15      **II.    MEMORANDUM OF POINTS AND AUTHORITIES**

16      Fed. R. Bankr. Proc. 3002(c) provides: "In a voluntary chapter 7 case, chapter 12 case, or

17  chapter 13 case, a proof of claim is timely filed if it is filed not later than 70 days after the order for

18  relief under that chapter or the date of the order of conversion to a case under chapter 12 or 13." As

19  Debtor's bankruptcy case was filed on March 16, 2023, the claims bar date, as stated on the Notice

20  sent to all creditors, was May 25, 2023, 70 days after the filing of the case.

21      The Bankruptcy Code states that: "the court, after notice and a hearing . . . shall allow such

22  claim in such amount, except to the extent that . . . proof of such claim is not timely filed." 11

23  U.S.C. § 502(b)(9).

24      Fed. R. Bankr. Proc. 3002(c)(6) provides: "On motion filed by a creditor before or after the

25  expiration of the time to file a proof of claim, the court may extend the time by not more than 60

26  days from the date of the order granting the motion. The motion may be granted **if the court finds**

27  **that the notice was insufficient under the circumstances to give the creditor a reasonable time**

28  **to file a proof of claim**." [emphasis added]. As both Mr. Mayorga and Mr. Martorell received

1  notice of the bankruptcy case and claims deadline well in advance of the deadline, notice was

2  clearly sufficient.

3      The first relevant precedent construing Bankruptcy Rule 3002(c) is In re Tomlan, 907 F.2d

4  114 (9th Cir. 1990) (per curiam), in which the Ninth Circuit adopted in full the District Court's

5  "excellent opinion" in In re Tomlan, 102 B.R. 790 (E.D.Wash.1989).  The Tomlan court, in a case

6  presenting facts similar to those presented here, held that the proof of claim filed by the Internal

7  Revenue Service in a Chapter 13 proceeding was untimely because it was filed five days late, and

8  cited "the well-settled rule that an untimely claim cannot be allowed, and that the Bankruptcy Court

9  has no discretion to allow such claims where no motion for an extension of time was filed prior to

10  the running of the filing period."  Id., 102 B.R. at 796.

11      The Ninth Circuit reiterated the Tomlan holding several years later in In re Osborne, 76 F.3d

12  306, 309 (9th Cir. 1996), holding that "the law is clear and unchallenged here that the Bankruptcy

13  Court has no discretion to allow a late-filed proof of claim."

14      The Bankruptcy Appellate Panel has made the case as unambiguously as possible.  Citing In

15  re Coastal Alaska Lines, Inc., 920 F.2d 1428 (9th Cir. 1990), the BAP held:

16          "The rule of Coastal Alaska simply is that no source of discretion exists

17          -- neither equitable jurisdiction, nor § 105, nor anything else -- and a

18          source is not created even if a good reason is presented for why a source

19          should exist. To excuse lateness that is caused by prevention would be to

20          exercise discretion that Coastal Alaska has found bankruptcy courts do

21          not possess."

22  In re Edelman, 237 B.R. 146, 152-153 (9th Cir. BAP 1999).

23      Mr. Mayorga may not rely on "excusable neglect" to obtain an enlargement of time under

24  Fed. R. Bankr. Proc. 9006(b).  As the Supreme Court noted in Pioneer Investment Services Co. v.

25  Brunswick Associates Ltd. Partnership, 507 U.S. 380, 389 (1993) while Rule 9006 generally

26  permits enlargement of time based on a showing of excusable neglect, Subsections (b)(3) of Rule

27  9006 makes clear that the Court may enlarge the time for taking action under Rule 3002(c) "only to

28  the extent and under the conditions stated in [that rule]."

1    Finally, since both Mr. Mayorga (and Mr. Martorell) received timely notice of the

2   bankruptcy case and claims deadline at the very commencement of the case, there are no grounds to

3   extend the deadline under Fed. R. Bankr. Proc. 3002(c)(6), even is such a motion were to filed.  As

4   a threshold matter, a creditor moving under Rule 3002(c)(6) must show that it received insufficient

5   notice of the proof of claim filing deadline. See In re Price, 2019 Bankr. LEXIS 1995 at *2 (Bankr.

6   W.D. Va. July 3, 2019), citing In re Wulff, 598 B.R. 459, 465 (Bankr. E.D. Wis. 2019).

7    Here, not only did Mr. Mayorga receive direct notice of the bankruptcy case and claims

8   deadline at his own address, but so did the attorney representing him with respect to the claim.  The

9   Ninth Circuit has held that actual timely notice to the creditor's attorney of the pendency of the

10  bankruptcy meets the due process requirement.  In re Price, 871 F.2d 97, 99 (9th Cir. 1989).

11   Based on the foregoing, Debtor submits that the Court must deny Mr. Mayorga's Claim 11

12  as untimely filed.[1]

13                                Respectfully submitted,

14

15                                WEINTRAUB ZOLKIN TALERICO & SELTH, LLP

16  Dated: May 31, 2023          By /s/ James R. Selth
                                 _____
17                                  James R. Selth
                                    Attorneys for Debtor,
18                                  LISA M. FANCHER

19

20

21

22

23

24

25

26   _____

27  [1] Debtor also objects to the arbitrary and wholly unsupported amount of Claim 11 filed by Mr.
    Mayorga, but as the claim is untimely, Debtor does not need to address this issue.  Debtor reserves
28  all rights to object to the claim if for any reason the Court does not sustain this Objection to Claim.

OBJECTION TO LATE-FILED PROOF OF CLAIM 11 FILED BY LOUIS MAYORGA

## **DECLARATION OF JAMES R. SELTH**

I, James R. Selth, declare and state as follows:

1.      I am an attorney duly admitted to practice in the State of California and before the United States District Court for the Central District of California.  I am employed by Weintraub Zolkin Talerico & Selth, LLP.

2.      I prepared and filed the Chapter 13 bankruptcy Petition, Schedules and Plan for Debtor Lisa M. Fancher ("Debtor") on March 16, 2023, and I am primarily responsible for representing Debtor in the above-captioned case.

3.      Louis Mayorga ("Mr. Mayorga") was listed in Debtor's Schedule F, and was mailed a copy of the Notice of Chapter 13 Bankruptcy Case ("Notice") to his address by the Court on March 18, 2023.  Also receiving a copy of the Notice was Mr. Mayorga's attorney Eduardo Martorell.   A true and correct copy of the Notice with Certificate of Service is attached hereto as **Exhibit 1**.  The Notice sets forth in Section 8 "Deadlines" the deadline of May 25, 2023 for all creditors (except governmental units) to file a proof of claim in the case.

4.      On March 16, 2023, I served and e-filed a Notice of Stay of Proceedings with the Los Angeles County Superior Court in the lawsuit entitled Louis Mayorga v. Lisa Fancher, Case No. BC643234, a true and correct copy of which is attached hereto as **Exhibit 2**.  The Notice of Stay of Proceedings was served by my office on Mr. Mayorga's attorney of record in the Superior Court case, Eduardo Martorell.

5.      On March 30, 2023, Mr. Martorell filed in the Superior Court case a Declaration of Eduardo Martorell in Support of Plaintiff's Response to Defendant's Status Report Regarding Bankruptcy.  A true and correct copy of the caption page of this Declaration is attached hereto as **Exhibit 3**.

6.      On April 27, 2023, my office served the Debtor's Notice of (1) 11 U.S.C. Section 341(a) Meeting, and (2) Hearing on Confirmation of Chapter 13 Plan and Modification of Secured Claim(s), with Copy of Chapter 13 Plan on all of her creditors, including Mr. Mayorga and his attorney Mr. Martorell.

//

7.      On May 26, 2023, at 5:03 p.m., I checked the Claims Register on PACER for Debtor's case.  The last claim showing as filed as of 5:03 was Claim 10 filed by Karish & Bjorgum, PC on May 25, 2023.

8.      On May 26, 2023, <u>after the deadline to file proofs of claim had passed</u>, Proof of Claim 11 in the amount of $1,000,000 was filed for Mr. Mayorga by Martorell Law, APC.  A true and correct copy of the Proof of Claim is attached hereto as **Exhibit 4**.  Said Proof of Claim was electronically signed on May 26, 2023 and was e-filed with the Court some time after 5:03 p.m. on that date, as set forth above.

9.      At no time did Mr. Mayorga or Mr. Martorell or any attorney on his behalf request an extension of the deadline to file a Proof of Claim, either by filing a Motion under Federal Rule of Bankruptcy Procedure 3002(c)(6), or by request to me.

10.     Neither the Notice mailed by the Court to Mr. Mayorga and Mr. Martorell on March 18, 2023 or the Debtor's Notice of (1) 11 U.S.C. Section 341(a) Meeting, and (2) Hearing on Confirmation of Chapter 13 Plan and Modification of Secured Claim(s), with Copy of Chapter 13 Plan mailed by my office to Mr. Mayorga and Mr. Martorell on April 27, 2023 was returned to my office as undeliverable.

I declare under penalty of perjury, under the laws of the United States, that the foregoing is true and correct, and that this declaration was executed by me on the 31st day of May, 2023, at Los Angeles, California.

/s/ *James R. Selth*

_____

JAMES R. SELTH

OBJECTION TO LATE-FILED PROOF OF CLAIM 11 FILED BY LOUIS MAYORGA

.

# EXHIBIT "1"

United States Bankruptcy Court

Central District of California

In re:                                                                                              Case No. 23-10324-VK

Lisa Fancher                                                                                     Chapter 13

     Debtor

# CERTIFICATE OF NOTICE

District/off: 0973-1                                    User: admin                                         Page 1 of 3

Date Rcvd: Mar 16, 2023                         Form ID: 309I                              Total Noticed: 79

The following symbols are used throughout this certificate:

| Symbol | Definition |
| --- | --- |
| + | Addresses marked '+' were corrected by inserting the ZIP, adding the last four digits to complete the zip +4, or replacing an incorrect ZIP. USPS regulations require that automation-compatible mail display the correct ZIP. |
| ^ | Addresses marked '^' were sent via mandatory electronic bankruptcy noticing pursuant to Fed. R. Bank. P. 9036. |
| # | Addresses marked '#' were identified by the USPS National Change of Address system as requiring an update. While the notice was still deliverable, the notice recipient was advised to update its address with the court immediately. |

**Notice by first class mail was sent to the following persons/entities by the Bankruptcy Noticing Center on Mar 18, 2023:**

| Recip ID | | Recipient Name and Address |
| --- | --- | --- |
| db | | Lisa Fancher, PO Box 22, Sun Valley, CA 91353-0022 |
| tr | + | Elizabeth (SV) F Rojas (TR), Valley Executive Center, 15260 Ventura Blvd., Suite 710, Sherman Oaks, CA 91403-5342 |
| 41461799 | + | Alicia Velasquez, 28515 N. North Valley Pkwy., #2117, Phoenix, AZ 85085-5418 |
| 41461800 | | Amery Smith, P.O. Box 5271, Los Angeles, CA 90027 |
| 41461802 | + | BMG Rights Management, 1745 Broadway, 19th Fl., New York, NY 10019-4640 |
| 41461803 | | Brandt Peterson, 12156 SE 37th St., Portland, OR 97222-6916 |
| 41461804 | + | Bruce Atta, 2332 Westcott Ave., Monterey Park, CA 91754-6017 |
| 41461805 | + | Casey Royer, 208 20th St., Newport Beach, CA 92663-4302 |
| 41461806 | | Charlotte Caffey, P.O. Box 29309, Los Angeles, CA 90029-0309 |
| 41461808 | + | Chip Kinman, 1812 N. Brighton St., Burbank, CA 91506-1006 |
| 41461809 | | Christine Cervenka, 311 N. Waverly St., Orange, CA 92866-1246 |
| 41461810 | | Cliff Roman, 2802 Cedar Wood Pl., Thousand Oaks, CA 91362-1244 |
| 41461811 | # | David Anthony Valdez, 15 Esplanade, Unit 15, Irvine, CA 92612-1710 |
| 41461812 | + | David Brown, 202 Reiber Rd., Renfrew, PA 16053-9322 |
| 41461813 | | Denise Mercedes, 60-48 60th Dr., Maspeth, NY 11378-3534 |
| 41461814 | | Dianne Chai, 4908 Dewey Rose Ct., Tampa, FL 33624-1047 |
| 41461815 | | Donald Bonebrake, 6550 Bobbyboyar Ave., West Hills, CA 91307-3425 |
| 41461816 | | Eduardo Martorell, 6100 Center Dr., Suite 1130, Los Angeles, CA 90045-9201 |
| 41461817 | | Eric Bjorgum, 119 E. Union St., Suite B, Pasadena, CA 91103-3951 |
| 41461818 | | Estate of Dix Denney, 12400 Ventura Blvd., Suite 126, Studio City, CA 91604-2406 |
| 41461820 | + | Francis Agnew, 5262 Acacia Ave., Garden Grove, CA 92845-2302 |
| 41461821 | + | George Belanger, 200 Mill Creek Rd., Stoutland, MO 65567-4223 |
| 41461822 | + | Glen Friedman, P.O. Box 69, Cooper Station, New York, NY 10276-0069 |
| 41461823 | + | Grant Estes, 3662 Barham Blvd., #M224, Los Angeles, CA 90068-1196 |
| 41461824 | | Guy Kyser, 27 Bliss Ave., Woodland, CA 95695-2816 |
| 41461825 | + | Harley Flanagan, c/o Laura Lee Flanagan, 110 Seaman Ave., #6E, New York, NY 10034-2810 |
| 41461828 | + | James McGearty, 560 W. Main St., Suite C, Alhambra, CA 91801-3376 |
| 41461829 | | James Rodriguez, 9392 Breakwater Cir., Huntington Beach, CA 92646-7203 |
| 41461830 | + | Jeff Atta, 735 Barris Dr., Fullerton, CA 92832-1001 |
| 41461831 | | Jeff McDonald, 11845 W. Olympic Blvd., Suite 1125W, Los Angeles, CA 90064-5096 |
| 41461832 | | Joe Becker, 36 Borica St., San Francisco, CA 94127-2802 |
| 41461833 | + | Joey Ruffino, 21061 Inferno Ln., Huntington Beach, CA 92646-6435 |
| 41461834 | | John Curry, 73593 Pinyon St., Palm Desert, CA 92260-4719 |
| 41461835 | | John Denney, 3436 Dryades St., New Orleans, LA 70115-5221 |
| 41461836 | | John Duchac, 7515 Meadowview Ln., Austin, TX 78752-1316 |
| 41461838 | + | Kurt Bauman, 16742 Daisy Ave., Fountain Valley, CA 92708-2211 |
| 41461839 | | Kurt Bloch, 320 NW 53rd St., Seattle, WA 98107-3527 |
| 41461840 | + | Kurt Heasley, 841 Woodland Church Rd., Buckingham, VA 23921-2217 |
| 41461841 | + | Larry Painter, 21 Lindholm Ln., Bayside, CA 95524-9344 |
| 41461842 | + | Louis Mayorga, 611 Sunset Ave., Apt. 1, Venice, CA 90291-2732 |
| 41461843 | | Marc Martin, 51 Cayman Brac, Aliso Viejo, CA 92656-6003 |
| 41461844 | | Mark Malone, 6678 Lindbergh Ave., Walnut, KS 66780 |
| 41461845 | + | Mary Sims, 5411 Russell Ave., #2, Los Angeles, CA 90027-3516 |
| 41461846 | + | Matt Simon, 1213 Grove Pl., Fullerton, CA 92831-3303 |

District/off: 0973-1                                User: admin                                Page 2 of 3
Date Rcvd: Mar 16, 2023                                Form ID: 309I                                Total Noticed: 79

| | | |
|---|---|---|
| 41461847 | | Michael B. Ackerman, 151 S. Parkwood Ave., Pasadena, CA 91107-4713 |
| 41461848 | + | Mike Muir, P.O. Box 325, Somis, CA 93066-0325 |
| 41461849 | + | Mike Patton, 1090 Arlington Pl., Bogart, GA 30622-5329 |
| 41461850 | + | Neil Gust, 60 Broadway, #6F, Brooklyn, NY 11249-8645 |
| 41461851 | | Newrez LLC, c/o Shellpoint Mortgage Servicing, P.O. Box 650840, Dallas, TX 75265-0840 |
| 41461852 | + | Pam Atta, 1870 Skyline Way, Fullerton, CA 92831-1937 |
| 41461853 | | Patricia Vanian, 82 Somervell Road, Harrow, Middlesex HA2 8TT, ENGLAND |
| 41461854 | | Penelope Houston, 6459 Hillgass Ave., Oakland, CA 94618-1311 |
| 41461855 | + | Philip Soto, 502 Lee Pl., Placentia, CA 92870-2311 |
| 41461856 | | Randy Stodola, 765 W. 1st St., San Pedro, CA 90731-1984 |
| 41461857 | + | Rikk Agnew, P.O. Box 401, Joshua Tree, CA 92252-0401 |
| 41461858 | | Roger Kunkel, 2205 Shasta Dr., Davis, CA 95616-6623 |
| 41461859 | | Scott Guerin, 370 Giano Ave., La Puente, CA 91744-5811 |
| 41461860 | | Scott Lasken, 6 Evergreen Dr., Placitas, NM 87043-8903 |
| 41461861 | | Scott McCaughey, 3715 N. Kerby Ave., Portland, OR 97227-1239 |
| 41461862 | | Steve McDonald, 2600 Park Oak Dr., Los Angeles, CA 90068-2544 |
| 41461863 | + | Steve Tesluk, 1645 Ashland St., Ashland, OR 97520-2326 |
| 41461864 | | Stuart Kindell, P.O. Box 5332, Shasta Lake, CA 96089-5332 |
| 41461865 | + | Tad Hutchison, 6559 35th St., #333, Seattle, WA 98115-7367 |
| 41461866 | | Timothy J Carhart, 6064 E. Oakbrook St., Long Beach, CA 90815-2227 |
| 41461867 | + | Tony Brandenburg, 153 N. Lima St., Sierra Madre, CA 91024-1751 |
| 41461868 | | Tony Lash, 5336 SE 68th St., Portland, OR 97206-5336 |
| 41461871 | | Ward Dotson, Purok 4, Barangay Anonang, Anonang 8119, PHILIPPINES |
| 41461872 | + | Wayne L. Greene, 2355 Westwood Blvd., #314, Los Angeles, CA 90064-2109 |

TOTAL: 68

**Notice by electronic transmission was sent to the following persons/entities by the Bankruptcy Noticing Center.**
Electronic transmission includes sending notices via email (Email/text and Email/PDF), and electronic data interchange (EDI). Electronic transmission is in Eastern
Standard Time.

| Recip ID | | Notice Type: Email Address | Date/Time | Recipient Name and Address |
|---|---|---|---|---|
| aty | | Email/Text: jselth@wztslaw.com | Mar 17 2023 01:35:00 | James R Selth, Weintraub Zolkin Talerico & Selth LLP, 11766 Wilshire Blvd., Ste 450, Los Angeles, CA 90025 |
| smg | | EDI: EDD.COM | Mar 17 2023 05:32:00 | Employment Development Dept., Bankruptcy Group MIC 92E, P.O. Box 826880, Sacramento, CA 94280-0001 |
| smg | | Email/Text: finance.bankruptcy@lacity.org | Mar 17 2023 01:35:00 | Los Angeles City Clerk, P.O. Box 53200, Los Angeles, CA 90053-0200 |
| 41461801 | | EDI: BANKAMER.COM | Mar 17 2023 05:26:00 | Bank of America, P.O. Box 672050, Dallas, TX 75267-2050 |
| 41461819 | | EDI: CALTAX.COM | Mar 17 2023 05:33:00 | Franchise Tax Board, Bankruptcy Section, MS: A-340, P.O. Box 2952, Sacramento, CA 95812-2952 |
| 41461826 | + | EDI: CITICORP.COM | Mar 17 2023 05:32:00 | Home Depot Credit Services, P.O. Box 790328, St. Louis, MO 63179-0328 |
| 41461827 | | EDI: IRS.COM | Mar 17 2023 05:32:00 | Internal Revenue Service, P.O. Box 7346, Philadelphia, PA 19101-7346 |
| 41461807 | | EDI: JPMORGANCHASE | Mar 17 2023 05:26:00 | Chase, P.O. Box 15298, Wilmington, DE 19850-5298 |
| 41461837 | ^ | MEBN | Mar 17 2023 01:29:58 | Kia Motors Finance, P.O. Box 20835, Fountain Valley, CA 92728-0835 |
| 41461870 | | EDI: USBANKARS.COM | Mar 17 2023 05:33:00 | U.S. Bank, P.O. Box 790179, St. Louis, MO 63179-0179 |
| 41461869 | | EDI: USBANKARS.COM | Mar 17 2023 05:33:00 | U.S. Bank, P.O. Box 790408, St. Louis, MO 63179-0408 |

TOTAL: 11

# BYPASSED RECIPIENTS

The following addresses were not sent this bankruptcy notice due to an undeliverable address, *duplicate of an address listed above, *P duplicate of a preferred address, or ## out of date forwarding orders with USPS.

| Recip ID | Bypass Reason | Name and Address |
|---|---|---|
| smg | * | Franchise Tax Board, Bankruptcy Section MS: A-340, P.O. Box 2952, Sacramento, CA 95812-2952 |

TOTAL: 0 Undeliverable, 1 Duplicate, 0 Out of date forwarding address

# NOTICE CERTIFICATION

I, Gustava Winters, declare under the penalty of perjury that I have sent the attached document to the above listed entities in the manner shown, and prepared the Certificate of Notice and that it is true and correct to the best of my information and belief.

Meeting of Creditor Notices only (Official Form 309): Pursuant to Fed .R. Bank. P.2002(a)(1), a notice containing the complete Social Security Number (SSN) of the debtor(s) was furnished to all parties listed. This official court copy contains the redacted SSN as required by the bankruptcy rules and the Judiciary's privacy policies.

Date: Mar 18, 2023                    Signature:        /s/Gustava Winters

---

# CM/ECF NOTICE OF ELECTRONIC FILING

The following persons/entities were sent notice through the court's CM/ECF electronic mail (Email) system on March 16, 2023 at the address(es) listed below:

| Name | Email Address |
|---|---|
| Elizabeth (SV) F Rojas (TR) | cacb_ecf_sv@ch13wla.com |
| James R Selth | on behalf of Debtor Lisa Fancher jselth@wztslaw.com  jselth@yahoo.com;maraki@wztslaw.com;sfritz@wztslaw.com |
| United States Trustee (SV) | ustpregion16.wh.ecf@usdoj.gov |

TOTAL: 3

| Information to identify the case: | | |
|---|---|---|
| Debtor 1 | **Lisa Fancher** | Social Security number or ITIN  **xxx-xx-9896** |
| | First Name    Middle Name    Last Name | EIN  _ _ − _ _ _ _ _ _ _ |
| Debtor 2 (Spouse, if filing) | First Name    Middle Name    Last Name | Social Security number or ITIN  _ _ _ _ |
| | | EIN  _ _ − _ _ _ _ _ _ _ |
| United States Bankruptcy Court | **Central District of California** | Date case filed for chapter  **13    3/16/23** |
| Case number: | **1:23-bk-10324-VK** | |

## Official Form 309I

# Notice of Chapter 13 Bankruptcy Case

7/21

**For the debtors listed above, a case has been filed under chapter 13 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read all pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

Confirmation of a chapter 13 plan may result in a discharge. Creditors who assert that the debtors are not entitled to a discharge under 11 U.S.C. § 1328(f) must file a motion objecting to discharge in the bankruptcy clerk's office within the deadline specified in this notice. Creditors who want to have their debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office by the same deadline. (See line 13 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at  https://pacer.uscourts.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.**

**Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.**

| | | About Debtor 1: | About Debtor 2: |
|---|---|---|---|
| 1. | **Debtor's full name** | Lisa Fancher | |
| 2. | **All other names used in the last 8 years** | dba Frontier Records, dba American Lesion Music | |
| 3. | **Address** | PO Box 22<br>Sun Valley, CA 91353−0022 | |
| 4. | **Debtor's attorney** <br> Name and address | James R Selth<br>Weintraub Zolkin Talerico & Selth LLP<br>11766 Wilshire Blvd.<br>Ste 450<br>Los Angeles, CA 90025 | Contact phone 310−207−1494<br>Email _____ |
| 5. | **Bankruptcy trustee** <br> Name and address | Elizabeth (SV) F Rojas (TR)<br>Valley Executive Center<br>15260 Ventura Blvd., Suite 710<br>Sherman Oaks, CA 91403 | Contact phone 818−933−5700<br>Email _____ |
| 6. | **Bankruptcy clerk's office** <br> Documents in this case may be filed at this address.<br>You may inspect all records filed in this case at this office or online at  https://pacer.uscourts.gov. | 21041 Burbank Blvd,<br>Woodland Hills, CA 91367−6603 | Hours open:<br>9:00AM to 4:00 PM<br>Contact phone 855−460−9641<br>Dated: 3/16/23 |

8/

**For more information, see pages 2 and 3**

Debtor  **Lisa Fancher**                                                                    Case number **1:23-bk-10324-VK**

| 7. Meeting of creditors | | |
|---|---|---|
| Debtors must attend the meeting to be questioned under oath by the trustee and by creditors. In a joint case, both spouses must attend. Creditors may attend, but are not required to do so. | **May 17, 2023 at 10:00 AM**<br><br>The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket. | Location:<br>**VIDEO CONFERENCE, GOTO TRUSTEE WEBSITE, FOR INSTRUCTIONS** |

| 8. Deadlines | | |
|---|---|---|
| The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **Deadline to file a complaint to challenge dischargeability of certain debts:**<br><br>**You must file:**<br>• a motion if you assert that the debtors are not entitled to receive a discharge under U.S.C. § 1328(f) or<br>• a complaint if you want to have a particular debt excepted from discharge under 11 U.S.C. § 523(a)(2) or (4). | **Filing deadline: 7/17/23** |
| | **Deadline for all creditors to file a proof of claim (except governmental units):** | **Filing deadline: 5/25/23** |
| | **Deadline for governmental units to file a proof of claim:** | **Filing deadline: 9/12/23** |
| | **Deadlines for filing proof of claim:**<br>  A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office.<br>If you do not file a proof of claim by the deadline, you might not be paid on your claim. To be paid, you must file a proof of claim even if your claim is listed in the schedules that the debtor filed.<br><br>Secured creditors retain rights in their collateral regardless of whether they file a proof of claim.<br><br>Filing a proof of claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. | |
| | **Deadline to object to exemptions:**<br>The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | **Filing deadline:**  30 days after the *conclusion* of the meeting of creditors |

| 9. Hearing on Confirmation of Plan | |
|---|---|
| | The hearing on confirmation will be held on:<br>**6/13/23 at 09:30 AM** , Location: **21041 Burbank Blvd, Crtrm 301, Woodland Hills, CA 91367**<br><br>The plan will be sent separately by the debtor. |

| 10. Creditors with a foreign address | |
|---|---|
| | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadline in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. |

| 11. Filing a chapter 13 bankruptcy case | |
|---|---|
| | Chapter 13 allows an individual with regular income and debts below a specified amount to adjust debts according to a plan. A plan is not effective unless the court confirms it. You may object to confirmation of the plan and appear at the confirmation hearing. The plan will be sent separately by the debtor, and the confirmation hearing will be held on the date shown in line 9 of this notice. The debtor will remain in possession of the property and may continue to operate the business, if any, unless the court orders otherwise. |

| 12. Exempt property | |
|---|---|
| | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors, even if the case is converted to chapter 7. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at  https://pacer.uscourts.gov. If you believe that the law does not authorize an exemption claimed, you may file an objection by the deadline. |

| 13. Discharge of debts | |
|---|---|
| | Confirmation of a chapter 13 plan may result in a discharge of debts, which may include all or part of a debt. However, unless the court orders otherwise, the debts will not be discharged until all payments under the plan are made. A discharge means that creditors may never try to collect the debt from the debtors personally except as provided in the plan. If you want to have a particular debt excepted from discharge under 11 U.S.C. § 523(a)(2) or (4), you must file a complaint and pay the filing fee in the bankruptcy clerk's office by the deadline. If you believe that the debtors are not entitled to a discharge of any of their debts under 11 U.S.C. § 1328(f), you must file a motion by the deadline. |

**For more information, see pages 1 and 3**

| 14. | **Proof of Debtor Identification (ID) and Proof of Social Security Number(SSN)** | The U.S. Trustee requires that individual debtors must provide to the trustee at the meeting of creditors an original picture ID and proof of SSN. Failure to comply may result in the U.S. Trustee bringing a motion to dismiss the case. Permissible forms of ID include a valid state driver's license, government or state–issued picture ID, student ID, military ID, U.S. Passport or legal resident alien card. Proof of SSN includes Social Security Card, current W–2 form, pay stub, payment advice, IRS Form 1099, Social Security Administration Report, or other official document which indicates name and SSN. |
|---|---|---|
| 15. | **Failure to File a Statement and/or Schedule(s)** | **IF THE DEBTOR HAS NOT FILED A STATEMENT AND/OR SCHEDULE(S) AND/OR OTHER REQUIRED DOCUMENTS,** the debtor must do so, or obtain an extension of time to do so, within 14 days of the petition filing date. Failure to comply with this requirement, or failure to appear at the initial section 341(a) meeting of creditors and any continuance, may result in dismissal of the case, unless leave of court is first obtained. If the debtor's case has not already been dismissed, AND DEBTOR FAILS TO DO ONE OF THE FOLLOWING WITHIN 45 DAYS AFTER THE PETITION DATE, subject to the provisions of Bankruptcy Code section 521(i)(4), the court WILL dismiss the case effective on the 46th day after the petition date without further notice: (1) file all documents required by Bankruptcy Code section 521(a)(1); or (2) file and serve a motion for an order extending the time to file the documents required by this section.<br><br>**SI EL DEUDOR NO HA PRESENTADO UNA DECLARACIÓN Y/O LISTA(S) DE ACREEDORES Y/U OTROS DOCUMENTOS REQUERIDOS,** tendrá que hacerlo dentro de un plazo de 14 días a partir de la fecha de presentación de la petición o tendrá que obtener una extensión del plazo para hacerlo. Si no cumple usted este requisito, o si no comparece a la junta 341(a) inicial de acreedores o a cualquier aplazamiento, esto resultará en que se declare sin lugar el caso, a menos de que obtenga un permiso del tribunal. Si no se ha declarado sin lugar el caso del acreedor, Y EL ACREEDOR NO HACE UNA DE LAS SIGUIENTES COSAS DENTRO DE UN PLAZO DE 45 DÍAS A PARTIR DE LA FECHA DE LA PETICIÓN, de acuerdo con lo dispuesto en la sección 521(i)(4) del Código de Quiebras, el juez DECLARARÁ el caso sin lugar a partir de el 46o día después de la fecha de presentación de petición sin más notificación: (1) registrar en actas todos los documentos que requiere la sección 521(a)(1) del Código de Quiebras; o (2) registrar y hacer entrega formal de una moción para pedir una orden que extienda el tiempo en que se pueden registrar en actas los documentos que requiere dicha sección. |
| 16. | **Failure to Appear at the Section 341(a) Meeting and Hearing of Confirmation of Chapter 13 Plan** | Appearance by debtor(s) and the attorney for debtor(s) is required at both the section 341(a) meeting and the confirmation hearing. Unexcused failure by the debtor(s) to appear at either the section 341(a) meeting and/or the confirmation hearing may result in dismissal of the case. |
| 17. | **Bankruptcy Fraud and Abuse** | Any questions or information relating to bankruptcy fraud or abuse should be addressed to the Fraud Complaint Coordinator, Office of the United States Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017. |
| 18. | **Assistance for Self–Represented Litigants** | For Self–Represented Litigants (individuals who do not have an attorney), see the following link for information on how you may afford an attorney in a chapter 13 case (Chapter 13 Panel for Self–Represented Litigants): https://www.cacb.uscourts.gov/local–and–county–bar–associations–lawyer–referral–options. |

**For more information, see pages 1 and 2**

.

# EXHIBIT "2"

Electronically FILED by Superior Court of California, County of Los Angeles on 03/16/2023 12:56 PM David W. Slayton, Executive Officer/Clerk of Court, by E. Chavez,Deputy Clerk

Case 1:23-bk-10324-VK    Doc 23    Filed 05/31/23    Entered 05/31/23 14:39:35    Desc
Main Document    Page 17 of 64

**CM-180**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>_James R. Selth - Bar #123420<br>WEINTRAUB ZOLKIN TALERICO & SELTH LLP<br>11766 Wilshire Blvd., Suite 450<br>Los Angeles, CA 90025<br><br>TELEPHONE NO.: (310) 207-1494   FAX NO. *(Optional):* (310) 442-0660<br>E-MAIL ADDRESS *(Optional):* jselth@wztslaw.com<br>ATTORNEY FOR *(Name):* Bankruptcy attorney for LISA FANCHER | *FOR COURT USE ONLY* |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
  STREET ADDRESS: 111 N. Hill St.
  MAILING ADDRESS:
  CITY AND ZIP CODE: Los Angeles, CA 90012
  BRANCH NAME: Central District

PLAINTIFF/PETITIONER: LOUIS MAYORGA

DEFENDANT/RESPONDENT: LISA FANCHER

| | |
|---|---|
| **NOTICE OF STAY OF PROCEEDINGS** | CASE NUMBER:<br>BC643234 |
| | JUDGE: Hon. Stuart M. Rice |
| | DEPT.: 1 |

**To the court and to all parties:**

1. Declarant *(name):* James R. Selth

   a. [X] is [ ] the party [X] the attorney for the party who requested or caused the stay.

   b. [ ] is [ ] the plaintiff or petitioner [ ] the attorney for the plaintiff or petitioner. The party who requested the stay has not appeared in this case or is not subject to the jurisdiction of this court.

2. This case is stayed as follows:

   a. [X] With regard to all parties.

   b. [ ] With regard to the following parties *(specify by name and party designation):*

3. Reason for the stay:

   a. [X] Automatic stay caused by a filing in another court. *(Attach a copy of the Notice of Commencement of Case, the bankruptcy petition, or other document showing that the stay is in effect, and showing the court, case number, debtor, and petitioners.)*

   b. [ ] Order of a federal court or of a higher California court. *(Attach a copy of the court order.)*

   c. [ ] Contractual arbitration under Code of Civil Procedure section 1281.4. *(Attach a copy of the order directing arbitration.)*

   d. [ ] Arbitration of attorney fees and costs under Business and Professions Code section 6201. *(Attach a copy of the client's request for arbitration showing filing and service.)*

   e. [ ] Other:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: March 16, 2023

James R. Selth
(TYPE OR PRINT NAME OF DECLARANT)                                        (SIGNATURE)

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-180 [Rev. January 1, 2007] | **NOTICE OF STAY OF PROCEEDINGS** | Legal<br>Solutions<br>Plus |

Cal. Rules of Court, rule 3.650

| Information to identify the case: | | | |
|---|---|---|---|
| Debtor 1 | **Lisa Fancher** | | Social Security number or ITIN   xxx–xx–9896 |
| | First Name    Middle Name    Last Name | | EIN   __–_____ |
| Debtor 2 (Spouse, if filing) | First Name    Middle Name    Last Name | | Social Security number or ITIN   ____ |
| | | | EIN   __–_____ |
| United States Bankruptcy Court    **Central District of California** | | | Date case filed for chapter  13  3/16/23 |
| Case number:    **1:23–bk–10324–VK** | | | |

Official Form 309I

## Notice of Chapter 13 Bankruptcy Case

7/21

**For the debtors listed above, a case has been filed under chapter 13 of the Bankruptcy Code. An order for relief has been entered.**

**This notice has important information about the case for creditors, debtors, and trustees, including information about the meeting of creditors and deadlines. Read all pages carefully.**

The filing of the case imposed an automatic stay against most collection activities. This means that creditors generally may not take action to collect debts from the debtors, the debtors' property, and certain codebtors. For example, while the stay is in effect, creditors cannot sue, garnish wages, assert a deficiency, repossess property, or otherwise try to collect from the debtors. Creditors cannot demand repayment from debtors by mail, phone, or otherwise. Creditors who violate the stay can be required to pay actual and punitive damages and attorney's fees. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although debtors can ask the court to extend or impose a stay.

Confirmation of a chapter 13 plan may result in a discharge. Creditors who assert that the debtors are not entitled to a discharge under 11 U.S.C. § 1328(f) must file a motion objecting to discharge in the bankruptcy clerk's office within the deadline specified in this notice. Creditors who want to have their debt excepted from discharge may be required to file a complaint in the bankruptcy clerk's office by the same deadline. (See line 13 below for more information.)

To protect your rights, consult an attorney. All documents filed in the case may be inspected at the bankruptcy clerk's office at the address listed below or through PACER (Public Access to Court Electronic Records at  https://pacer.uscourts.gov).

**The staff of the bankruptcy clerk's office cannot give legal advice.**

**To help creditors correctly identify debtors, debtors submit full Social Security or Individual Taxpayer Identification Numbers, which may appear on a version of this notice. However, the full numbers must not appear on any document filed with the court.**

**Do not file this notice with any proof of claim or other filing in the case. Do not include more than the last four digits of a Social Security or Individual Taxpayer Identification Number in any document, including attachments, that you file with the court.**

| | | About Debtor 1: | About Debtor 2: |
|---|---|---|---|
| 1. | **Debtor's full name** | Lisa Fancher | |
| 2. | **All other names used in the last 8 years** | dba Frontier Records, dba American Lesion Music | |
| 3. | **Address** | 12838 La Maida St. Valley Village, CA 91607 | |
| 4. | **Debtor's attorney** Name and address | James R Selth Weintraub Zolkin Talerico & Selth LLP 11766 Wilshire Blvd. Ste 450 Los Angeles, CA 90025 | Contact phone 310–207–1494 Email _____ |
| 5. | **Bankruptcy trustee** Name and address | Elizabeth (SV) F Rojas (TR) Valley Executive Center 15260 Ventura Blvd., Suite 710 Sherman Oaks, CA 91403 | Contact phone 818–933–5700 Email _____ |
| 6. | **Bankruptcy clerk's office** Documents in this case may be filed at this address. You may inspect all records filed in this case at this office or online at https://pacer.uscourts.gov. | 21041 Burbank Blvd, Woodland Hills, CA 91367–6603 | Hours open: 9:00AM to 4:00 PM Contact phone 855–460–9641 Dated: 3/16/23 |

8/

**For more information, see pages 2 and 3**

Debtor **Lisa Fancher**                                                                      Case number **1:23-bk-10324-VK**

| | | |
|---|---|---|
| **7. Meeting of creditors**<br>Debtors must attend the meeting to be questioned under oath by the trustee and by creditors. In a joint case, both spouses must attend. Creditors may attend, but are not required to do so. | **May 17, 2023 at 10:00 AM**<br><br>**The meeting may be continued or adjourned to a later date. If so, the date will be on the court docket.** | **Location:**<br>**VIDEO CONFERENCE, GOTO TRUSTEE WEBSITE, FOR INSTRUCTIONS** |
| **8. Deadlines**<br>The bankruptcy clerk's office must receive these documents and any required filing fee by the following deadlines. | **Deadline to file a complaint to challenge dischargeability of certain debts:**<br><br>**You must file:**<br>• a motion if you assert that the debtors are not entitled to receive a discharge under U.S.C. § 1328(f) or<br>• a complaint if you want to have a particular debt excepted from discharge under 11 U.S.C. § 523(a)(2) or (4). | **Filing deadline: 7/17/23** |
| | **Deadline for all creditors to file a proof of claim (except governmental units):** | **Filing deadline: 5/25/23** |
| | **Deadline for governmental units to file a proof of claim:** | **Filing deadline: 9/12/23** |
| | **Deadlines for filing proof of claim:**<br>A proof of claim is a signed statement describing a creditor's claim. A proof of claim form may be obtained at www.uscourts.gov or any bankruptcy clerk's office.<br>If you do not file a proof of claim by the deadline, you might not be paid on your claim. To be paid, you must file a proof of claim even if your claim is listed in the schedules that the debtor filed.<br><br>Secured creditors retain rights in their collateral regardless of whether they file a proof of claim.<br><br>Filing a proof of claim submits the creditor to the jurisdiction of the bankruptcy court, with consequences a lawyer can explain. For example, a secured creditor who files a proof of claim may surrender important nonmonetary rights, including the right to a jury trial. | |
| | **Deadline to object to exemptions:**<br>The law permits debtors to keep certain property as exempt. If you believe that the law does not authorize an exemption claimed, you may file an objection. | **Filing deadline:** 30 days after the *conclusion* of the meeting of creditors |
| **9. Hearing on Confirmation of Plan** | The hearing on confirmation will be held on:<br>**6/13/23 at 09:30 AM** , Location: **21041 Burbank Blvd, Crtrm 301, Woodland Hills, CA 91367**<br><br>The plan will be sent separately by the debtor. | |
| **10. Creditors with a foreign address** | If you are a creditor receiving a notice mailed to a foreign address, you may file a motion asking the court to extend the deadline in this notice. Consult an attorney familiar with United States bankruptcy law if you have any questions about your rights in this case. | |
| **11. Filing a chapter 13 bankruptcy case** | Chapter 13 allows an individual with regular income and debts below a specified amount to adjust debts according to a plan. A plan is not effective unless the court confirms it. You may object to confirmation of the plan and appear at the confirmation hearing. The plan will be sent separately by the debtor, and the confirmation hearing will be held on the date shown in line 9 of this notice. The debtor will remain in possession of the property and may continue to operate the business, if any, unless the court orders otherwise. | |
| **12. Exempt property** | The law allows debtors to keep certain property as exempt. Fully exempt property will not be sold and distributed to creditors, even if the case is converted to chapter 7. Debtors must file a list of property claimed as exempt. You may inspect that list at the bankruptcy clerk's office or online at https://pacer.uscourts.gov. If you believe that the law does not authorize an exemption that debtors claimed, you may file an objection by the deadline. | |
| **13. Discharge of debts** | Confirmation of a chapter 13 plan may result in a discharge of debts, which may include all or part of a debt. However, unless the court orders otherwise, the debts will not be discharged until all payments under the plan are made. A discharge means that creditors may never try to collect the debt from the debtors personally except as provided in the plan. If you want to have a particular debt excepted from discharge under 11 U.S.C. § 523(a)(2) or (4), you must file a complaint and pay the filing fee in the bankruptcy clerk's office by the deadline. If you believe that the debtors are not entitled to a discharge of any of their debts under 11 U.S.C. § 1328(f), you must file a motion by the deadline. | |

**For more information, see pages 1 and 3**

Debtor **Lisa Fancher**                                                                                           Case number **1:23-bk-10324-VK**

| | | |
|---|---|---|
| **14.** | **Proof of Debtor Identification (ID) and Proof of Social Security Number(SSN)** | The U.S. Trustee requires that individual debtors must provide to the trustee at the meeting of creditors an original picture ID and proof of SSN. Failure to do so may result in the U.S. Trustee bringing a motion to dismiss the case. Permissible forms of ID include a valid state driver's license, government or state–issued picture ID, student ID, military ID, U.S. Passport or legal resident alien card. Proof of SSN includes Social Security Card, current W–2 form, pay stub, payment advice, IRS Form 1099, Social Security Administration Report, or other official document which indicates name and SSN. |
| **15.** | **Failure to File a Statement and/or Schedule(s)** | **IF THE DEBTOR HAS NOT FILED A STATEMENT AND/OR SCHEDULE(S) AND/OR OTHER REQUIRED DOCUMENTS,** the debtor must do so, or obtain an extension of time to do so, within 14 days of the petition filing date. Failure to comply with this requirement, or failure to appear at the initial section 341(a) meeting of creditors and any continuance, may result in dismissal of the case, unless leave of court is first obtained. If the debtor's case has not already been dismissed, AND DEBTOR FAILS TO DO ONE OF THE FOLLOWING WITHIN 45 DAYS AFTER THE PETITION DATE, subject to the provisions of Bankruptcy Code section 521(i)(4), the court WILL dismiss the case effective on the 46th day after the petition date without further notice: (1) file all documents required by Bankruptcy Code section 521(a)(1); or (2) file and serve a motion for an order extending the time to file the documents required by this section.<br><br>**SI EL DEUDOR NO HA PRESENTADO UNA DECLARACIÓN Y/O LISTA(S) DE ACREEDORES Y/U OTROS DOCUMENTOS REQUERIDOS,** tendrá que hacerlo dentro de un plazo de 14 días a partir de la fecha de presentación de la petición o tendrá que obtener una extensión del plazo para hacerlo. Si no cumple usted este requisito, o si no comparece a la junta 341(a) inicial de acreedores o a cualquier aplazamiento, esto resultará en que se declare sin lugar el caso, a menos de que obtenga un permiso del tribunal. Si no se ha declarado sin lugar el caso del acreedor, Y EL ACREEDOR NO HACE UNA DE LAS SIGUIENTES COSAS DENTRO DE UN PLAZO DE 45 DÍAS A PARTIR DE LA FECHA DE LA PETICIÓN, de acuerdo con lo dispuesto en la sección 521(i)(4) del Código de Quiebras, el juez DECLARARÁ el caso sin lugar a partir de el 46o día después de la fecha de presentación de petición sin más notificación: (1) registrar en actas todos los documentos que requiere la sección 521(a)(1) del Código de Quiebras; o (2) registrar y hacer entrega formal de una moción para pedir una orden que extienda el tiempo en que se pueden registrar en actas los documentos que requiere dicha sección. |
| **16.** | **Failure to Appear at the Section 341(a) Meeting and Hearing of Confirmation of Chapter 13 Plan** | Appearance by debtor(s) and the attorney for debtor(s) is required at both the section 341(a) meeting and the confirmation hearing. Unexcused failure by the debtor(s) to appear at either the section 341(a) meeting and/or the confirmation hearing may result in dismissal of the case. |
| **17.** | **Bankruptcy Fraud and Abuse** | Any questions or information relating to bankruptcy fraud or abuse should be addressed to the Fraud Complaint Coordinator, Office of the United States Trustee, 915 Wilshire Blvd., Suite 1850, Los Angeles, CA 90017. |
| **18.** | **Assistance for Self–Represented Litigants** | For Self–Represented Litigants (individuals who do not have an attorney), see the following link for information on how you may afford an attorney in a chapter 13 case (Chapter 13 Panel for Self–Represented Litigants):<br>https://www.cacb.uscourts.gov/local-and-county-bar-associations-lawyer-referral-options. |

**For more information, see pages 1 and 2**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I, the undersigned, am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 11766 Wilshire Blvd., Suite 1170, Los Angeles, CA 90025.

On **March 16, 2023**, I served the foregoing document(s) described as:

**NOTICE OF STAY OF PROCEEDINGS**

on the interested parties in this action by placing a true copy thereof addressed as follows:

Michael B. Ackerman
151 S. Parkwood Ave.
Pasadena, CA 91107-4713

Eric Bjorgum
119 E. Union St., Suite B
Pasadena, CA 91103-3951

Eduardo Martorell
6100 Center Dr., Suite 1130
Los Angeles, CA 90045-9201

[X]    **(BY MAIL)** I caused such envelope with postage thereon fully prepaid to be placed in the United States Mail at Los Angeles, California.

[ ]    **(BY OVERNIGHT COURIER)** I caused said envelope(s) to be delivered by overnight   courier to the office or residence of the addressee as shown above.

[ ]    **(BY PERSONAL SERVICE)** I caused such envelope to be delivered by hand to the office or residence of the addressee as shown above.

[X]    **(BY E-MAIL)** I caused such document to be sent via e-mail:

Michael B. Ackerman: mackermanesq@gmail.com
Eric Bjorgum: eric.bjorgum@kb-ip.com
Eduardo Martorell: emartorell@martorell-law.com

[X]    **(State)** I declare that under penalty of perjury under the laws of the State of California that the above is true and correct.

[ ]    **(Federal)** I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on **March 16, 2023**, at Los Angeles, California.

_____
Yerika Ramirez

.

# EXHIBIT "3"

1

**MARTORELL LAW APC**
Eduardo Martorell, State Bar No. 240027
EMartorell@Martorell-Law.com
Jordan M. Zim, State Bar No. 332757
JZim@Martorell-Law.com
PLAYA DISTRICT
6100 Center Drive, Suite 1130
Los Angeles, CA 90045
Phone: (323) 840-1200; Fax: (323) 840-1300

Electronically FILED by
Superior Court of California,
County of Los Angeles
3/30/2023 12:52 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By C. Perez, Deputy Clerk

2

3

4

5

6

Attorneys for Plaintiff,
LOUIS MAYORGA

7

8

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

9

## FOR THE COUNTY OF LOS ANGELES

10

| | |
|---|---|
| LOUIS MAYORGA, an individual, | CASE NO. BC643234 |
| Plaintiff, | Assigned for all Purposes to the Hon. Stuart M. Rice Dept. 1 |
| v. | |
| LISA FANCHER, an individual doing business as Frontier Records and American Lesion Music; MICHAEL B. ACKERMAN, Esq., an individual; ALFRED ERIC BJORGUM, Esq., an individual; and DOES 1 THROUGH 50, inclusive, | **DECLARATION OF EDUARDO MARTORELL IN SUPPORT OF PLAINTIFF'S RESPONSE TO DEFENDANT'S STATUS REPORT REGARDING BANKRUPTCY** |
| Defendants. | Status Conference Hearing:         March 30, 2023 Time:             1:45 pm Dept:             1 |
| | Complaint Filed:    December 8, 2016 Trial (Phase I):    March 1, 2021 |

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

.

# EXHIBIT "4"

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

| Debtor 1 | Lisa Fancher |
|---|---|
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | Central District of California |
| Case number | 1:23-bk-10324-VK |

## Official Form 410

# Proof of Claim

04/22

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

| Part 1: | Identify the Claim |
|---|---|

| 1. Who is the current creditor? | Louis Mayorga |
|---|---|
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor   Louichi Mayorga |

| 2. Has this claim been acquired from someone else? | ☑ No ☐ Yes.  From whom? _____ |
|---|---|

| 3. Where should notices and payments to the creditor be sent? Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|---|
| | Martorell Law APC c/o Jean-Paul Le Clercq | Martorell Law APC c/o Jean-Paul Le Clercq |
| | Name | Name |
| | 6100 Center Drive, Suite 1130 | 6100 Center Drive, Suite 1130 |
| | Number    Street | Number    Street |
| | Los Angeles    CA    90045 | Los Angeles    CA    90045 |
| | City    State    ZIP Code | City    State    ZIP Code |
| | Contact phone 323-840-1200 | Contact phone 323-840-1200 |
| | Contact email JpLeClercq@martorell-law.com | Contact email JpLeClercq@martorell-law.com |
| | Uniform claim identifier for electronic payments in chapter 13 (if you use one): ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ — ___ ___ ___ ___ | |

| 4. Does this claim amend one already filed? | ☑ No ☐ Yes.  Claim number on court claims registry (if known) _____    Filed on ___ / ___ / _____ MM / DD / YYYY |
|---|---|

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No ☐ Yes.  Who made the earlier filing? _____ |
|---|---|

| **Part 2:** | **Give Information About the Claim as of the Date the Case Was Filed** |
| --- | --- |

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor:  ____  ____  ____  ____

---

**7. How much is the claim?**    $ _____ 1,000,000.00    **Does this amount include interest or other charges?**

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

---

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Two lawsuits listed within Part 4, Item 9 of ECF No. 1. _____

---

**9. Is all or part of the claim secured?**

☑ No

☐ Yes.  The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe:  _____

**Basis for perfection:**  _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ _____

**Amount of the claim that is secured:**    $ _____

**Amount of the claim that is unsecured:**  $ _____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

---

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.**    $ _____

---

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property:  _____

---

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | |
|---|---|---|---|
| | ☐ Yes. *Check one:* | | **Amount entitled to priority** |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | | |

---

**Part 3:   Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   05/26/2023
                   MM / DD / YYYY

/s/ Jean-Paul LeClercq
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Jean-Paul LeClercq | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Partner | | |
| Company | Martorell Law APC | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 6100 Center Drive, Suite 1130 | | |
| | Number        Street | | |
| | Los Angeles | CA | 90045 |
| | City | State | ZIP Code |
| Contact phone | 323-840-1200 | Email | jpleclercq@martorell-law.com |

# EXHIBIT A

Evan S. Cohen, SBN 119601
1180 South Beverly Drive, Suite 510
Los Angeles, CA 90035-1157
(310) 556-9800
esc@manifesto.com

Bridget B. Hirsch, SBN 257015
7435 N. Figueroa St., No. 412422
Los Angeles, CA 90041
(323) 387-3413
bridget@bbhirsch.com

Attorney for Plaintiff Louichi Mayorga

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## COUNTY OF LOS ANGELES

## CENTRAL DISTRICT – STANLEY MOSK COURTHOUSE

| | |
|---|---|
| LOUIS MAYORGA p/k/a LOUICHI MAYORGA, an individual, | Case No.: BC643234 |
| Plaintiff, | FIRST AMENDED COMPLAINT FOR: |
| v. | (a) BREACH OF CONTRACT; |
| LISA FANCHER, an individual doing business as Frontier Records and American Lesion Music; BMG RIGHTS MANAGEMENT (US) LLC, a Delaware limited liability company, and DOE 2 through DOE 20, inclusive, | (b) AN ACCOUNTING; |
| | (c) FRAUD AND CONCEALMENT |
| Defendants. | |

1

First Amended Complaint

Plaintiff LOUIS MAYORGA alleges:

# I

## GENERAL ALLEGATIONS

1.      Plaintiff Louis Mayorga, p/k/a Louichi Mayorga ("Mayorga") is a songwriter and musician. Mayorga resides in the City of Los Angeles, in Los Angeles County, California.

2.      Defendant Lisa Fancher ("Fancher") is an individual who does business as Frontier Records ("Frontier"). Frontier is an independent record label that has been releasing records since 1980, most notably in the punk rock genre. Fancher resides in the City of Los Angeles, in Los Angeles County, California.

3.      Defendant BMG Rights Management (US) LLC ("BMG") is a limited liability company organized under the laws of the State of Delaware. BMG is qualified to do business in the State of California, and has a substantial office in the City of Los Angeles, in Los Angeles County, California.

4.      The true names or capacities, whether individual, corporate, or otherwise of defendants Doe 2 through Doe 20, inclusive, are unknown to plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each of the defendants designated herein as a Doe is legally responsible in some manner for the events and happenings referred to below, and legally caused injury and damages proximately to plaintiffs as alleged below.

5.      Venue is proper in this district because the contract at issue was entered into within the City of Los Angeles, in Los Angeles County.

///
///
///
///
///
///

2

First Amended Complaint

**II**

**FIRST CAUSE OF ACTION**

**FOR BREACH OF CONTRACT**

**(Recording Agreement)**

**(Against Defendant FANCHER)**

6.  Plaintiff re-alleges paragraphs 1 through 5, inclusive, as if fully set forth.

7.  Mayorga was a member of the well-known punk rock or "crossover thrash" musical group Suicidal Tendencies ("ST") from 1981 to 1988. On April 28, 1983, Mayorga and the three other members of ST at the time, Mike Muir, Grant Estes, and Amery Smith, entered into a recording agreement (the "Recording Agreement") with Fancher. A true and correct copy of the Recording Agreement is attached hereto as "Exhibit A."

8.  In the Recording Agreement, Fancher agreed to release at least one album by ST, and pay for the recording of the sound recordings to be included on the album, in exchange for ownership of the sound recordings. Fancher also had and still does have the obligation to: account to each of the four members of ST every six months; to accurately report the number of phonorecords sold; and to pay royalties to each of the members of ST, individually, at those times. In addition, Fancher had and still does have the obligation to pay royalties for other uses of the sound recordings, such as use in digital media (*e.g.*, permanent digital downloads, and streaming services such as Apple Music, Spotify and Pandora), and for use of the sound recordings in film and television productions, video games, and commercials.

9.  With regard to licenses to third parties (including, but not limited to, licenses granted to Apple, Inc.'s iTunes and Apple Music, Spotify, Pandora, Rhapsody, and YouTube), the Recording Agreement, in the fourth paragraph of the section designated as "Computation of Royalties," provides that "the royalty will be fifty (50%) of the net amount actually received by or credited to [Fancher] by such licensee, and will

3

First Amended Complaint

1  be payable in the next accounting period after such payment has been so received or

2  credited."

3        10.    On July 5, 1983, Frontier released an album by ST entitled *Suicidal*

4  *Tendencies*. ST achieved considerable success and notoriety with a recording from that

5  album entitled "Institutionalized," which was co-written by Mayorga and Muir.

6  "Institutionalized" received substantial plays on MTV. The song has been used in the

7  films *Iron Man, Repo Man,* and *The Brady Bunch Movie*, and on television in *Miami*

8  *Vice*. The video for the song was also favorably featured in an episode of Beavis and

9  Butthead. In addition, a cover of the song is included in the music video game *Guitar*

10  *Hero II* for PlayStation 2 and Xbox 360. The song was also featured in the game *Mat*

11  *Hoffman's Pro BMX 2*.

12        11.    Fancher, through her label Frontier, has sold the Album continuously since

13  1983. However, some years ago, Fancher ceased to operate her record label in any

14  semblance of compliance with standard music industry practices, at least with regard to

15  accounting and paying artists.

16        12.    Fancher has ceased to provide any royalty statements to Mayorga, and,

17  Mayorga is informed and believes and thereon alleges, to the members of ST, and

18  Fancher has not made any regular payments of royalties. Mayorga has not received a

19  royalty statement from Fancher in many years. Through discovery, Mayorga has received

20  documents which indicate that Fancher has not rendered a royalty statement since mid-

21  2008, nearly ten years ago.

22        13.    At various times in the past four years, Mayorga has asked Fancher to pay

23  him royalties for the sales of the Album. However, Fancher usually responds with a series

24  of excuses about how she "does not have the money," or words to that effect, and

25  eventually, after Mayorga made repeated requests, Fancher has sent Mayorga a check for

26  an arbitrary amount.

27        14.    At least since in or about 2008, the checks that Fancher has sent to

28  Mayorga have *never* been accompanied by a royalty statement of any kind, with Mayorga

4

First Amended Complaint

1   left to trust the representations of Fancher as to whether he is, in the words of Fancher,

2   "caught up," or not (that is, "caught up," presumably, with the correct amount that

3   corresponds to Mayorga's share of the total ST royalties owed by Fancher). But

4   regardless of the random amounts that Fancher has paid Mayorga from time to time,

5   Mayorga has no information at all about record sales, digital income, licensing, foreign

6   sales, or use of the recordings in film productions, video games, and the like.

7        15.    At times, and especially in the past year, Fancher has been vindictive, petty,

8   and retaliatory with regard to paying Mayorga. On June 3, 2016, after Mayorga had yet

9   again demanded payment, Fancher wrote Mayorga an email in which she said: "I've been

10   sending money when I can. I got nothing this month, I'm not a bank. You are very close

11   to getting caught up & it hasn't been 20 years since you got a stmt. Considering you're

12   actively trying to take the record away, there's not a lot of incentive to put you first in

13   line. Sales are very bad, people aren't buying anything right now. Hopefully next month

14   will be better...." After that email, Fancher ceased paying Mayorga altogether.

15        16.    Fancher's words to Mayorga that he was "actively trying to take the record

16   away" is apparently a reference to Mayorga's effort to exercise his rights under § 203 of

17   the Copyright Act of 1976, in which Mayorga, and the other authors of the works at

18   issue, have the right to terminate grants of copyright after 35 years. Fancher is retaliating

19   against Mayorga for exercising his rights under federal law, which is a breach of the

20   Recording Agreement on the part of Fancher.

21        17.    Within the past four years, Fancher has repeatedly breached the Recording

22   Agreement by failing and refusing to pay Mayorga the correct amount of royalties based

23   upon sales of the Album and all other uses of the recordings, on the agreed-upon date

24   every six months, and by failing and refusing to provide Mayorga with any accountings

25   whatsoever, at the times set forth in the Recording Agreement, that is, every six months.

26        18.    In addition, Mayorga is informed and believes and thereon alleges, Fancher

27   has also breached the Recording Agreement by failing to pay the correct amount of

28   mechanical royalties to the music publishers of the compositions embodied on the Album

First Amended Complaint

1    (one of which is Mayorga or his music publishing designee), including substantial digital

2    downloads of "Institutionalized." Through discovery, Mayorga has learned that Fancher

3    has no evidence of *any* recent payment of mechanical royalties.

4         19.    Pursuant to the Recording Agreement, Mayorga was required to give notice

5    of the breach of contract to Fancher, and Fancher was required to cure the breach within

6    thirty days of that formal notice.

7         20.    Mayorga's attorney sent formal notice of the breach to Fancher's business

8    address (a post office box in the Sun Valley area of Los Angeles) on September 7, 2016,

9    but Fancher failed to respond at all, within the thirty days. The cure period expired on

10   October 6, 2016.

11        21.    On November 11, 2016, more than one month after the expiration of the

12   30-day cure period, Fancher wrote an email to Mayorga's attorney, in which she

13   acknowledged receipt of the formal notice, that is, the September 7, 2016 letter. Fancher

14   wrote "I'm in receipt of both your letters," referring to the formal notice and a previous

15   letter of August 1, 2016, also detailing a number of breaches of the Recording Agreement

16   by Fancher.

17        22.    Through discovery conducted in this action, Mayorga has learned that

18   Fancher has been, for many years, breaching the Recording Agreement in several

19   respects. Fancher has miscalculated the correct amount of royalties for sales of physical

20   phonorecords and sales of permanent digital downloads. Furthermore, Fancher is actively

21   concealing the amount of money that Fancher has received from digital streaming, and

22   has simply kept it all for herself.

23        23.    Mayorga did not discover that Fancher was concealing revenues from him

24   because Fancher secretly computed the royalties due to Mayorga and the other band

25   members. Fancher has consistently miscalculated the correct royalty rates for compact

26   discs, vinyl albums, and permanent digital downloads. However, because he received no

27   royalty statements, Mayorga did not discover the miscalculations until March 2017, when

28   his counsel analyzed the documents that Fancher produced in discovery. Therefore,

First Amended Complaint

1 | accrual of the statute of limitation for breach of contract (that is, four years) should be
2 | delayed for the period of Fancher's secrecy, which was exacerbated by Fancher's fraud
3 | and misrepresentations. The delayed discovery rule "may be applied to breaches
4 | which can be, and are, committed in secret and, moreover, where the harm flowing
5 | from those breaches will not be reasonably discoverable by plaintiffs until a future
6 | time." *April Enterprises, Inc. v. KTTV* (1983) 147 Cal.App.3d 805, 832.

7 |      24.     As a result of Fancher's breach of contract, Mayorga has been damaged in
8 | an amount to be proven at trial, but in no event less than $40,000.

9 |
10 |                                        **III**
11 |                       **SECOND CAUSE OF ACTION**
12 |                       **FOR BREACH OF CONTRACT**
13 |                         **(Co-Publishing Agreement)**
14 |                   **(Against Defendants FANCHER and BMG)**

15 |      25.     Plaintiff re-alleges paragraphs 1 through 23, inclusive, as if fully set forth.
16 |      26.     On September 9, 1983, Muir and Fancher entered into an agreement called
17 | the "Co-Publishing Agreement," in which Muir, ostensibly acting for himself and the
18 | members of ST, agreed that Fancher, doing business as American Lesion Music, would
19 | divide the ownership of each of the musical compositions appearing on the Album, with
20 | Fancher receiving fifty percent (50%) of each copyright, and the songwriters of each song
21 | retaining the other 50%. No other members of ST signed the Co-Publishing Agreement.
22 | A true and correct copy of the Co-Publishing Agreement is attached hereto as "Exhibit
23 | B."

24 |      27.     In addition to receiving half of the copyrights, pursuant to ¶ 4 of the Co-
25 | Publishing Agreement, Fancher had the right to "issue all licenses for the mechanical
26 | reproduction and synchronization uses of said compositions throughout the world, and for
27 | sub-publication rights to said compositions throughout the world in [*sic*] behalf of both
28 | parties."

1    28.    At some point after September 9, 1983 and before 1985, in Los Angeles,

2    California, Fancher entered into a written agreement by which she conveyed and assigned

3    certain copyright interests and rights to a company called Bug Music, Inc., in exchange

4    for money ("the Bug Agreement"). As part of the Bug Agreement, Fancher purported to

5    convey rights (including full administration rights) in and to the musical compositions

6    appearing on the Album to Bug. Mayorga does not have a copy of the Bug Agreement.

7    29.    Even though Fancher sold these rights to Bug, she remained primarily

8    responsible for the duties and obligations set forth in the Co-Publishing Agreement,

9    including the duty to pay the correct amount of mechanical royalties, and the duty to pay

10   Mayorga the correct amount of royalties from the exploitation of the compositions.

11   30.    On account of the Bug Agreement, Bug claimed to own, beginning in or

12   about 1984, a portion of the musical compositions appearing on the Album, and full

13   administration rights for one hundred percent (100%) of all of those compositions. In

14   September 2011, the assets of Bug were acquired by BMG, and BMG has, since that

15   time, sent Mayorga accountings based upon BMG's position that it has succeeded to

16   rights that Fancher obtained in the Co-Publishing Agreement.

17   31.    Bug and BMG are successors-in-interest to the rights and duties that

18   Fancher obtained in the Co-Publishing Agreement.

19   32.    Within the past four years, however, BMG has repeatedly breached the Co-

20   Publishing Agreement by (1) failing to obtain payments of mechanical royalties from

21   Fancher for all of the sales of the Album, for the benefit of the music publishers of the

22   musical compositions appearing on the Album (including Mayorga), other than Fancher;

23   (2) failing to pay Mayorga his share of the publisher's performance royalties collected

24   from worldwide sources, including Broadcast Music, Inc., and (3) deducting

25   commissions from Mayorga's share of royalties, even though the Co-Publishing

26   Agreement has no provision for such fees being deducted.

27   33.    Through discovery, Mayorga has learned that Fancher has, in recent years,

28   failed and refused to pay mechanical royalties to either the copyright co-owners, or to

8

First Amended Complaint

1   BMG. However, because he received no royalty statements from Fancher, Mayorga did
2   not discover Fancher's malfeasance until March 2017, when his counsel analyzed the
3   documents that Fancher produced in discovery. Therefore, accrual of the statute of
4   limitation for breach of contract (that is, four years) should be delayed for the period of
5   Fancher's secrecy, which was exacerbated by Fancher's fraud and misrepresentations.
6   The delayed discovery rule "may be applied to breaches which can be, and are,
7   committed in secret and, moreover, where the harm flowing from those breaches will not
8   be reasonably discoverable by plaintiffs until a future time." *April Enterprises, Inc. v.*
9   *KTTV* (1983) 147 Cal.App.3d 805, 832.

10       34.   As a result of Fancher's and BMG's breaches of contract, Mayorga has
11   been damaged in an amount to be proven at trial, but in no event less than $25,000.

13                                 **IV**

14                        **THIRD CAUSE OF ACTION**

15                          **FOR AN ACCOUNTING**

16          **(Against Defendant FANCHER and DOES 2 through 20)**

17       35.   Plaintiff realleges paragraphs 1 through 23, and paragraphs 26 through 33,
18   inclusive, as if fully set forth.

19       36.   In the past four years, Fancher has breached the Recording Agreement and
20   the Co-Publishing Agreement by failing to provide accounting statements to Mayorga,
21   and by failing to pay Mayorga his share of the royalties that are due.

22       37.   There is no adequate remedy at law, and the equitable remedy of an
23   accounting is just, because the multiplicity of transactions makes the accounts too
24   complicated for a court of law.

25       38.   In addition, in this action, Fancher has failed and refused to provide most of
26   the financial information regarding the exploitation of the musical works and recordings
27   described herein, and Mayorga requires that the equitable power of this court be utilized
28   to obtain a true and complete record of Fancher's sales, and, especially, digital revenues.

## V

## FOURTH CAUSE OF ACTION

## FOR FRAUD AND CONCEALMENT

### (Against Defendant FANCHER and DOES 2 through 20)

39.     Plaintiff realleges paragraphs 1 through 23, and paragraphs 26 through 33 inclusive, as if fully set forth.

40.     For several years, as described above, Fancher has responded to requests from Mayorga for royalties from the exploitation of the recordings, by repeatedly telling Mayorga that the checks that she sent to him were the true and correct amount that Fancher owed to him (at the particular time that Fancher wrote the checks), sometimes making representations that Mayorga was "caught up," or not (that is, "caught up," presumably, with the correct amount that corresponds to Mayorga's share of the total ST royalties owed by Fancher).

41.     These statements were false, and intentionally designed to deceive Mayorga and cause him to believe that the payments that Fancher did make were accurate. They were not. The amounts that Fancher paid to Mayorga (namely, six payments in the past four years totaling $7,350), were not the correct amounts, and Fancher knew they were not the correct amounts at the time she made them. Specifically, the amounts were based upon virtually no rational calculations of royalties on the part of Fancher, and were (1) based upon an incorrect calculation of the amounts due for permanent digital downloads, and (2) based upon an incorrect calculation of the amounts due for the sales of physical phonorecords.

42.     Most tellingly, Fancher knowingly and deliberately concealed *all* money that Fancher was receiving for digital streaming, including, for instance, money received from such well-known digital platforms as Spotify, Pandora, Rhapsody, and YouTube. For instance, as of the filing of this First Amended Complaint, ST's recording of "Institutionalized" has received over 5,737,000 "plays" on Spotify; the royalties from this use (and other digital uses) have been received by Fancher, who concealed these revenues

10

First Amended Complaint

1   from Mayorga, who has received not one penny. According to figures released by the
2   Recording Industry Association of America in March 2017, a trade group for record
3   labels, digital streaming accounts for *more than one-half* of all United States revenue
4   from music. Pursuant to the terms of the Recording Agreement, ST is entitled to receive
5   50% of all revenue received by Fancher from third-party licenses, including licenses to
6   iTunes, Spotify, Pandora, and other digital platforms.

7        43.   Mayorga relied upon the statements made by Fancher when she
8   corresponded with him with regard to the small payments she made, from time to time.
9   And, because Fancher failed and refused to provide any royalty statements or information
10  to Mayorga, he could not learn the true facts concerning Fancher's false statements and
11  concealment of royalties. The dramatic rise of streaming services – worldwide -- only
12  occurred in the past several years, and only *after* the last time that Fancher provided a
13  royalty statement. For instance, Spotify began its streaming service in October 2008 in
14  most of Europe, and only provided service in the United States since July 2011.

15       44.   Mayorga did not discover the true facts until March 2017, when counsel for
16  Mayorga reviewed and analyzed the documents produced by Fancher in discovery, which
17  quite clearly demonstrated Fancher's miscalculation of royalties and concealment of
18  streaming revenue.

19       45.   If Mayorga had known the true facts regarding Fancher's fraudulent
20  statements and concealment of royalties, he would not have relied on Fancher's
21  statements such as "you're caught up," "sales are bad" and "no one has any money,"
22  which were intended to cause Mayorga to believe that royalties were being paid correctly.

23       46.   As a direct, actual, and foreseeable result of Fancher's fraud and
24  concealment, Mayorga has been damaged in an amount to be determined at the time of
25  trial, but, in any event, an amount not less than $40,000.

26       47.   The aforementioned conduct by Fancher was deceitful, fraudulent, and
27  done with the intent of depriving Mayorga of his royalties and legal rights, and to cause
28  him injury. Fancher's conduct in representing that her style of "on the fly" accounting

was accurate and correct, was just a smoke-screen for deliberately miscalculating royalties, concealing the money that she was receiving from digital streaming, and keeping tens of thousands of dollars for herself. Fancher's behavior in this regard was not limited to Mayorga, but extended to the other members of ST as well. Fancher's conduct was and is malicious and oppressive, and subjected Mayorga to cruel and unjust hardship in conscious disregard of his rights, so as to justify an award of exemplary and punitive damages, in an amount to be proven at trial.

WHEREFORE, plaintiff prays for judgment as follows:

1.     On the First Cause of Action, for damages for breach of the Recording Agreement in an amount to be proven at trial, but in no event less than $40,000;

2.     On the Second Cause of Action, for damages for breach of the Co-Publishing Agreement in an amount to be proven at trial, but in no event less than $25,000;

3.     On the Third Cause of Action, for an accounting between Mayorga and Fancher;

4.     On the Third Cause of Action, for the amount found to be due from Fancher to Mayorga as a result of the accounting;

5.     On the Fourth Cause of Action, for damages due to Fancher's fraud and concealment, in an amount to be proven at trial, but in no event less than $40,000;

6.     On the Fourth Cause of Action, for an award of exemplary and punitive damages, in an amount to be proven at trial;

7.     For interest on the unpaid amount at the legal rate, from the dates that payments should have been made;

8.     For an award of attorneys' fees, pursuant to Civil Code § 1717.5;

///

///

///

12

First Amended Complaint

1        9.     For costs of suit incurred; and

2      10.    For such other and further relief as the court should deem just and proper.

3

4

5  Dated: May 9, 2017          By:  _____

6                            EVAN S. COHEN

                         Attorney for Plaintiff Louis Mayorga

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

13
First Amended Complaint

EXHIBIT A

PRODUCTIVE!
BOX 22, SUN VALLEY
CALIFORNIA 91352

April 28, 1983

Mr. Satchel Tendencies

Gentlemen:

Your signature under the words "AGREED AND ACCEPTED" below shall constitute the following a complete and binding agreement between you and us as follows:

1. You hereby grant to us, for the term of this agreement, your exclusive services as a performing artist for the purposes of making phonograph master recordings. The annexed schedules entitled "Terms and Conditions" and "Composition of Royalties", the word "Company" shall refer to us and the word "Artist" shall refer to you, individually.

2. The initial term of this agreement will be six months from the date hereof and we shall have one option to extend the term hereof six months. We agree to record one album of your performances during the initial term this agreement is in effect. The option shall be conditioned upon our having recorded and released at least one album and we agree to record one album of your performances during its effect. The option shall be exercisable by our giving notice thereof to you in writing at least thirty (30) days prior to the expiration of the preceding term.

3. We agree to account for and pay you royalties upon all the terms and conditions set forth in the annexed schedule entitled "Computation of Royalties". The royalty rate applicable to each master shall be twenty (20) percent of the wholesale price for records sold in disc form. Four (4) percent shall be received by each band member who plays on the master recording and four (4) percent shall be received by Glen T. Friedman for his services.

4. We agree to advance all costs of recording, re-recording, mixing, re-mixing, editing, equipment, engineers or producers, plus additional cash advances from time to time as may be mutually agreed to. All such nonreturnable advances will be charged against the royalties earned by you. Not withstanding the foregoing, no advance will be paid while you are in an uncapped position, except as our direction.

5. You agree that all musical compositions which are recorded hereunder and which are written in whole or in part by you or which are owned or controlled in whole or in part by you, directly or indirectly ("Controlled Compositions") shall be published by us or our designated affiliates.

If the foregoing correctly reflects your understanding and agreement with us, please sign in the space provided below.

Glen Friedman, Frontier Records

## TERMS AND CONDITIONS

RECORDING SESSIONS. Artist will appear at the times and places mutually agreed upon, from time to time, for all recording sessions required by Company hereunder. Upon Company's request, Artist will re-record any selections until a recording satisfactory to Company shall have been obtained.

Should Artist be unavailable for recording activities hereunder whether by reason of illness, incapacity, or default, outside employment or for any other reason, Company may, at its option, extend the then current term of this agreement for a period equal to all or any part of the period of such unavailability.

Should Artist fail to appear at any recording session called by Company of which Artist has been given reasonable notice, the minimum number of masters for the current term may, at Company's option, be reduced by the number of masters which were scheduled to have been recorded at such session.

If during the term of this agreement Company shall fail to record the minimum number of records provided, and if, within thirty days after the expiration of the term hereof, Artist shall notify Company by registered mail of Artist's request that Company record such of Artist's performances as will fulfill Company's minimum obligation hereunder, then Company shall have the option to extend the most recent term for a period of six months for the purpose of satisfying said minimum recording requirement. In the event that Artist does not so notify Company within such thirty-day period, then Company shall be under no obligation to Artist for failure to record such minimum number of record sides. Nothing contained in this paragraph shall derogate from or attest the release requirement upon which Company's options are conditioned pursuant to this Agreement.

Artist also agrees to appear, upon reasonable notice, at times and studios selected by Company for the purpose of making video tape recordings combining audio and visual performances by Artist. Artist will be consulted with regard to all creative aspects of such recordings, and hereby authorizes Company to make use of such video tapes by any method now or hereafter known, to perform the video tapes publicly and to permit the public performances thereof by television or any other method now or hereafter known, and to permit others to do any or all of the foregoing, all upon such terms and conditions as we may approve. Such video tapes will remain the exclusive property of Company in perpetuity, and Company shall have the right to manufacture, sell, distribute, advertise, and to lease, license, convey or otherwise use or dispose of the videos, provided however that if any profit is derived from such use, Artist shall be paid fifty (50%) of the net amount earned and actually received by Company, to be applied to Artist's royalty account, after deducting any and all costs of production and any other applicable expenses.

EXCLUSIVITY. From the date hereof and so long as this Agreement remains in force, Artist agrees not to perform or permit the use of Artist's name, likeness or other identification or voice or other sound effects, for or in connection with the production, sale, distribution, advertising, publicity, or exploitation of phonograph records by or for anyone other than Company. Should Artist make any sound recordings for motion pictures, television, electrical transcriptions or any other medium, Artist will do so only pursuant to a written contract prohibiting the use of such sound recordings, directly or indirectly, for phonograph record purposes, unless such use has been authorized in writing by Company. Artist will furnish Company with a copy of each such contract upon request.

Artist further agrees that Artist will not make any phonograph record of any selection recorded hereunder, or authorize the release or distribution in phonograph record, tape, or any other form of any sound recording made by Artist of any such selection by anyone other than Company, at any time prior to expiration of five (5) years from the date such selection was recorded for Company hereunder or three years following the expiration of this agreement, whichever date shall be later. Should artist violate such rerecording restrictions Company may, in addition to any other right or remedy which it may have on account of such breach, terminate its obligation to pay Artist any royalties earned thereafter with respect to any selection which was improperly rerecorded by Artist.

RIGHTS GRANTED. Artist grants to Company.

(a) All rights of every kind, and the complete, unconditional, exclusive, perpetual, unencumbered and worldwide title, in and to all results and proceeds of Artist's services and performances hereunder, any and all master phonograph records, sound recordings, photographs and other material of every kind made or authorized by Company hereunder, and which include the voice, instrumental or other sound effects, name, likeness, services or performances of Artist, including, without limitation, the right to record, reproduce, broadcast, transmit, sell, exhibit, distribute, advertise, exploit, perform, and use the same, separately or in combination with any other material, for any purpose, in any manner, under any label, trade-mark or other identification, and by any means or method, now or hereafter known, and to refrain from all or any part thereof. Nothing contained herein shall be construed to authorize Company to use of license Artist's name or likeness in connection with merchandising rights or in commercial endorsements.

(b) The perpetual right to use Artist's name (both legal and professional), biographical data, voice and other sound effects, or any reproduction or simulation thereof, in connection with the sale, advertising, distribution and exploitation of phonograph records and for any other purpose reasonably related to Company's business, which right shall be exclusive during the term hereof but non-exclusive thereafter.

(c)  The right to assign this agreement and to assign, license, or otherwise transfer or delegate all or any of Company's rights, powers, privileges and property under this agreement to any person, firm or corporation.

(d)  The right, at Company's expense, to bring any action or proceeding in Artist's name, or otherwise, for the purpose of enforcing or protecting any of its rights hereunder, and the right, as Artist's attorney-in-fact, to execute, deliver, file and record any and all further documents which Company may deem necessary to evidence and effectuate any of its rights hereunder.

INCIDENTAL SERVICES.  Artist will, from time to time, at Company's request, whenever the same will not unreasonably interfere with other professional activities of Artist, appear for photography, poster and cover art, etc., under direction of Company or its nominee; appear for interviews with representatives of the press and Company's publicity personnel, and advise and consult with Company regarding Artist's performances hereunder and similar matters.  Artist will also, if requested by Company, and subject to Artist's reasonable availability, make personal appearances on radio and television and elsewhere and record taped interviews, spot announcements, trailers and electrical transcriptions, all for the purpose of advertising, exploiting and/or "plugging" phonograph records recorded by Artist hereunder and for other general public relations or promotional purposes reasonably related to the music business of Company.

FORCE MAJEURE.  Neither Company nor Artist shall be deemed in default if production of phonograph records or performance of any obligation hereunder if delayed or becomes impossible or impracticable by reason of act of God, war, fire, earthquake, strike, labor controversy, civil commotion, acts of government, its agencies or officers, or any order, regulation, ruling or action by any labor union or association of artists, musicians, composers, or employees affecting Company or the phonograph record industry, or delays in the delivery of materials and supplies, or similar matters beyond the control of Company or Artist.  Upon the occurrence of such event, Company may, by notice to Artist, suspend its obligations under this agreement (except as to royalties on masters recorded prior to the occurrence of any such event) for the duration of such delay, impossiblity or impracticability; and Company may, at its option, extend the current term of this agreement for a period equal to all or any part of the period of such suspension.

DEFAULTS OF ARTIST.  In the event of any wilful default or breach by Artist in the performance of any of Artist's obligations hereunder, Company may suspend its obligation hereunder for the duration of such default or breach and until the same has been cured, and may, at its option, extend the current term hereof for a period equal to all or any part of the period of such default or breach.

It is acknowledged that the performances of Artist hereunder and the rights and privileges granted to Company under the terms hereof are of a special, unique and intellectual character which gives them a peculiar value, the loss of which cannot be reasonably or adequately compensated in damages in an action at law, and that a breach by Artist of any provisions of this agreement will cause Company great and irreparable injury and damage. Accordingly, Artist hereby expressly agrees that Company shall be entitled to the remedies of injunction, specific performance, and other equitable relief to prevent a breach of this agreement by Artist.  This provision

shall not, however, be construed as a waiver of any rights which Company
may have in the premises for damages or otherwise. We shall have the right
to recoup any damages from any sums which may be earned by you hereunder.

MECHANICAL LICENSES. Any and all musical compositions recorded
hereunder which are written or controlled, in whole or in part, by Artist
or any member of Artist or by any person or entity owned or controlled
directly or indirectly by Artist or any member of Artist or in which Artist
has an interest, direct or indirect (hereinafter "Controlled Compositions")
shall be and hereby are licensed to Company or Company's licensees at the
statutory rate, or that rate established by the Copyright Royalty Tribunal,
in effect on the date the recording hereof is initially released hereunder,
but at not more than seven times such rate with respect to single disc,
twelve-inch long-playing albums or equivalent configurations. Such royalties
shall be payable only in respect of net sales for which royalties are
payable pursuant to the annexed Computation of Royalties schedule. In the
event that Controlled Compositions hereunder are included in packages
containing more than one twelve-inch long-playing album or its equivalent,
the aggregate maximum royalty in respect of such multiple record set shall
be that proportion of the maximum applicable to a single disc album as
the suggested retail list price of such multiple disc album shall bear to
the suggested retail list price of normal top-line single disc albums of
the same configuration.

MISCELLANEOUS. This agreement constitutes the entire agreement
between the parties and supersedes all prior negotiations and understandings
relating hereto; no modification hereof shall be binding unless confirmed
by a written instrument signed by a duly authorized officer of our Company.
No officer, employee or representative of Company has any authority to
make any representation or promise not contained in this agreement and
Artist expressly agrees that Artist has not executed this agreement in
reliance on any such representation or promise.

Nothing contained in this agreement shall be construed to require
the commission of any act contrary to law. Whenever there is any conflict
between any provision of this agreement and any material law, contrary
to which the parties have no legal right to contract, the latter shall
prevail, but in such event the provisions of this agreement affected shall
be curtailed and restricted only to the extent necessary to bring them
within such legal requirements, and only during the time such conflict exists.
Notwithstanding the foregoing, no breach hereof shall be deemed material
unless the party alleged to have so breached the agreement shall have failed
to remedy any such alleged breach within thirty (30) days after written
notification of the nature and extent of the alleged breach shall have been
received by the party alleged to have so breached the agreement.

Artist warrants and represents that neither the name(s) used by
Artist or any member of Artist nor any musical composition, selection,
arrangement or orchestration written or furnished by Artist hereunder shall
violate or infringe upon any civil or proprietary rights of any person
including without limitation trademarks, trade names, copyrights or
rights of privacy.

Artist warrants and represents that he is in all respects free to enter into this agreement and that he has the right to grant to Company all of the rights granted to Company under this agreement. Artist agrees to indemnify Company and its licensees and hold them harmless from any and all loss, damage, or liability, including reasonable attorneys fees, resulting from any claimed breach by Artist of this agreement or of any of the representations or warranties of Artist contained herein.

Any written notice which a party is required or may desire to give the other party hereunder shall be given by addressing the same to the other party's address as shown on the face hereof, or at such other place as may be designated in writing by the other party, or at the address of the other party last known to the other party, by registered or certified mail, and when it shall be deposited so addressed, postage prepaid, in the United States mail, and/or when the party shall have delivered the same to the other party personally or to the other party's agent, the party shall be deemed to have been duly given such notice.

Nothing herein contained shall constitute a partnership between or joint venture by the parties hereto, or constitute either party the agent or employee of the other.

The initial term hereof, and each subsequent term as to which Company exercises its option, shall run consecutively, and therefore, in case of the extension of any term, the commencement dates of the remaining terms, and the time within which Company may exercise its respective options hereunder, shall be postponed accordingly.

If Artist is a group, the following conditions will apply:

(a) Payments made hereunder, except union scale payments and copyright royalties, shall at our option be made by one check in the name of the group or its duly authorized representative, and such payment shall fulfill our obligations hereunder to each member of said group.

(b) We reserve the right to record any member of the group signing this agreement as if such member of the group were the only person signing hereunder. If we elect to have a member of the group record individually, royalties and advances for masters so recorded shall be payable solely to such member, and such master shall not be deemed a master with respect to the group.

(c) A breach of this agreement by any member of the group shall, at our election, be deemed a breach by all, and we may by notice in writing terminate the engagement under this agreement of the member or members of the group who have breached hereunder, or at our option, of the entire group. In the event any member of the group is terminated by notice from us or by mutual consent, each party shall be relieved and discharged from liability for masters unrecorded at the time of such notice or mutual consent.

During the term of this contract, you shall become and remain a member in good standing of any appropriate labor union or unions with which we may at any time have an agreement lawfully requiring such union membership.

All logos, designs or other merchandising or promotional artwork created by us for use directly in connection with your name and/or the sale of your records shall belong entirely to us and may not be used by any person other than us without our prior written consent, which consent, it is clearly understood, may be withheld for any reason.

The words "you" and "Artist" as used in this agreement refer individually and collectively to the members of the group, if Artist should be a group, whether presently or hereafter signatories to or otherwise bound by the terms and provisions of this contract. The terms "we", "us" and "Company" are used interchangeably in this agreement.

The term "records" or "phonograph records" shall include all forms of recordings (both visual and non-visual) including, without limitation, discs of any speed or size, pre-recorded tapes, cartridges and any other recorded devices now known or which may hereafter become known.

PUBLISHING. In addition to and notwithstanding any of the foregoing, you are also hereby engaged to render personal services as a songwriter, composer and otherwise, as may be hereinafter set forth. You hereby accept such engagement and agree to render such services for us upon the terms and conditions set forth in the Songwriter's Agreement annexed hereto. You hereby agree to execute any additional documents which may be necessary in connection with your obligations hereunder. If, upon reasonable notice, you fail to execute such documents, we shall have the right, pursuant to the terms and conditions hereof, to execute such documents on your behalf. Such documents or agreements will supplement and not supersede this agreement.

This agreement shall be subject to and construed in accordance with the laws of the State of California applicable to agreements entered into and performed fully therein. A waiver by either party hereto of a breach of any provision herein shall not be deemed a waiver of any subsequent breach, nor a permanent modification of such provision.

## COMPUTATION OF ROYALTIES

Royalties payable hereunder shall be computed at the applicable
royalty rate on the basis of the suggested retail list price, less all
taxes and union payments, in respect of 90% of Company's sales of all
phonograph records embodying Artist's performances, except as hereinafter
provided.  The royalty with respect to all forms of pre-recorded tape
shall be computed at three-quarters of the otherwise applicable rate.

Company's net sales of any record shall be determined on the basis
of the number of copies of such record sold by Company and for which
Company has been paid after all returns, rebates, credits, cancellations,
exchanges, etc., and prior to final determination thereof Company may
set up reasonable reserves therefore, not to exceed twenty (20%) percent
of the total number of records sold in the two most recent accounting
periods on a given royalty statement.

With respect to net sales (in disc and tape configurations) through
normal retail channels outside of the United States via the usual distri-
butors of Company's licensees (including records sold for export to licensees
in any of such other countries), the royalty payable will be fifty (50%) per-
cent of the otherwise applicable royalty were such records sold in the United
States, or fifty (50%) of the amount actually received or credited to Company
by such licensee, whichever shall be less.  All such royalties shall be
computed in the national currency of the country involved, and shall be paid
at the same rate of exchange as Company was paid, net of all applicable taxes.
In the event Company does not receive payment in the United States currency,
Company may deposit Artist's royalties in such foreign currency to Artist's
account and at Artist's expense, in such currency, in a depository selected by
Company, and will notify Artist accordingly.  Deposit as aforesaid of payments
representing royalties applicable hereto shall satisfy Company's obligations
hereunder for the sales to which such royalty payments are applicable.

With respect to royalties earned through sales by any licensee within
the United States, the royalty payable will be fifty (50%) percent of the net
amount actually received by or credited to Company by such licensee, and
will be payable in the next accounting period after such payment has been
so received or credited.

Company may at any time elect to utilize a different method of
computing royalties from that specified above, so long as such method or
methods are applicable to substantially all persons similarly engaged by
Company, and provided that such method does not reduce the net monies due Artist.

As to records not consisting entirely of masters recorded hereunder,
Artist's royalties otherwise payable hereunder shall be prorated on the basis
of the number of masters recorded hereunder which are on such records
compared to the total number of masters contained on such record, provided
however that no royalty shall be payable in respect of such recordings
which are intended for sale at a substantially lower price than regular albums
("Sampler albums").  As to masters embodying Artist's performances hereunder,
together with the performances of another artist or artists, Artist's royalty

otherwise payable hereunder, and the recording costs otherwise chargeable to Artist with respect to such masters, shall be prorated on the basis of the number of royalty artists whose performances are on such masters.

Notwithstanding anything to the contrary contained herein, with respect to records sold via direct mail or through a mail order operation (including, without limitation, record club plans, records sold via television and/or radio advertisements through mail order or special retail outlets (so-called "K-Tel" packages)) or any form of flat-fee licensing, the royalty shall be fifty (50%) percent of the net amount actually received by or credited to Company in connection with such sales.

With respect to mid-priced records, the royalty rate shall be three-fourths (3/4) of the otherwise applicable royalty rate (a mid-priced record shall mean a record whose suggested retail list price in the territory involved is more than 66-2/3% but not more than 80% of the normal suggested retail list price for records in such territory).

With respect to "E.P." records, the royalty rate shall be three-fourths of the otherwise applicable royalty rate applicable to records in album configuration (an E.P. record shall mean a 33 1/3 rpm disc record or the tape equivalent whose suggested retail list price in the territory involved is 80% or less of the normal suggested retail list price for albums in such territory and which has a playing time of approximately one-half or less of the normal playing time of records in album configuration.)

All recording costs incurred by Company hereunder (or Artist's proper proportionate share of such costs), and all advance payments made to Artist by Company under this agreement shall be charged against Artist's royalties hereunder, if and when earned. "Recording Costs" means all costs incurred by Company for and with respect to the production of masters, as distinguished from manufacturing and distribution costs, including, without limitation, the cost to Company of all instrumental musicians, vocalists, conductors, arrangers, orchestrators, copyists, engineers, producers, etc., including any union session fees payable to Artist, studio rental and charges, payments to a trustee or fund based on wages to the extent required by any agreement between Company and any labor organization or trustee, and all other costs and expenses incurred by Company in producing masters hereunder, from time to time, and which are customarily recognized as recording costs in the phonograph record industry, including studio hire, rehearsal costs, equipment rental, and any and all other such costs. Costs of any session which is delayed or cancelled because of Artist's unavailability shall, at Company's option, be allocated to recording costs of masters accepted by Company hereunder, or charged against any payments due Artist.

No royalties shall be payable in respect of (i) records furnished on a no-charge basis or sold for less than Company's posted wholesale list price to disc jockeys, publishers, employees of Company, motion picture companies, radio and television stations and other customary recipients of free, discounted or promotional records; (ii) records sold by Company or Company's licensees at close-out or cut-out prices or for scrap, or at less than Company's inventory cost; (iii) records (or fractions thereof) given

away or shipped under a sales program on a "no-charge" or "freebie" basis or sold for 50% or less of Company's or Company's licensees' posted wholesale list price, to distributors, subdistributors, dealers and others as an inducement to purchase Artist's records whether or not such records are intended for sale to third parties.

No royalties shall be payable to you on sales by any of our licensees until payment on such sales has been received by us. In the event such licensees have made advances or guarantees to us in anticipation of such sales, payment shall not be deemed to have been received by us for purposes of this paragraph until such sales have been credited by our licensees against such advances or guarantees.

No royalties shall be payable to Artist unless and until Company is in a "recouped position", i.e., Company has recouped from royalties otherwise payable hereunder, in accordance with the Agreement, the advances paid to Artist pursuant to this Agreement. If, at Artist's request Company makes payment to Artist or a third party designee of Artist of amounts not provided for in the Agreement (which Company is in no way obligated to do), such payments shall also be recoupable as aforesaid, unless agreed to otherwise by Company in writing. As used herein, Company's "net royalties" or "net receipts" shall mean Company's royalties earned by actual sales by Company or Company's licensees of records embodying masters recorded hereunder, for which Company has been paid or otherwise received a credit to Company's account, less Company's direct expenses in respect of same, including, without limitation, costs of collection, shipping, taxes, payments to any unions or guilds (or their trust funds), etc. Sales by Company's licensees shall be deemed to have occurred during the accounting period in which Company receives payment therefor. "Net sales" means the cumulative number of records sold by Company or Company's affiliates to independent third parties, for which Company has been paid, less records returned at any time for any reason, including at Company's request, and less all credits, cancellations, exchanges, etc. Prior to final determination thereof, Company may withhold a reasonable reserve against returns, etc.

Within 90 days after March 31 and September 30 of each year during which applicable phonograph records are sold, Company will render a statement of accrued royalties earned under the Agreement during the preceding calendar half-year, less all amounts chargeable thereagainst (including, to the extent lawful or as permitted hereunder, all or any portion of any indebtedness then owing by Artist to Company) under the Agreement. Simultaneously with the rendering of its statement, Company will pay Artist the net amount, if any, shown to be due thereon, less any deductions of withholdings required by law or any union or guild sales or regulations. Artist shall be deemed to have consented to each statement, and such statement shall become final and binding upon Artist one year after the rendition thereof unless Artist renders specific written objection thereto within such period; and if Company gives Artist written notice that it denies the validity of the objection, unless suit is instituted within 6 months of the date Company gives such notice.

Artist may designate a certified public accountant who may audit Company's books and records concerning the distribution and sale of records embodying the masters recorded hereunder. Said examination shall be at Artist's sale cost and expense, during normal business hours, and upon reasonable notice, and may not be conducted more than once annually. Such examination

shall be conditioned upon the accountant's agreement to Company that he will not voluntarily disclose any findings to pay person other than Artist, or Artist's attorney or other advisers, and that he is not being compensated on a contingent fee basis.

We shall have the option at any time during the initial term and during each option period (as specified in paragraph 2 herein) to elect to modify this Agreement by written notice to you so that you are guaranteed minimum compensation hereunder for the then current term and for each consecutive twelve (12) month period of the term thereafter, if any, at the rate of Six Thousand Dollars ($6,000) for each twelve (12) month period as follows: If we exercise our said option during any option period, we shall pay to you prior to the end of each such twelve (12) month period of the term hereof after the exercise of said option (including the twelve (12) month period in which said option is exercised) the difference between Six Thousand Dollars ($6,000) and the total of (i) the royalties earned by you hereunder during such twelve (12) month period; plus (ii) so much of the advances, if any, paid to you in such twelve (12) month period pursuant to this Agreement as remains unrecouped at the end of such period. If the option specified in this paragraph 13 is exercised during the initial term, as the same may be extended, then the guarantee payment which shall be made shall be computed by multiplying Six Thousand Dollars ($6,000) by a fraction, the numerator of which is the number of months including any fractions thereof of said initial term and the denominator of which is twelve (12) (hereinafter the "initial term guarantee"), and we shall pay you or cause you to be paid prior to the end of the initial term the difference between the initial term guarantee and the total of (i) the royalties earned by you hereunder during said initial term; plus (ii) so much of the advances, if any, paid to you in said initial term pursuant to this Agreement as remains unrecouped at the end of such period. All payments made to you pursuant to this paragraph 12 are deemed non-returnable advances against royalties payable to you hereunder or under any other agreement between you and us or our parent, subsidiary, affiliated or associated companies. In the event the minimum compensation of Six Thousand Dollars ($6,000) as set forth in the California Code of Civil Procedure §526 and California Civil Code §3423 is increased at any time during the term of this Agreement, and we have guaranteed you such minimum compensation as specified above, then at our sole option, this Agreement may be amended and modified so as to increase the amounts payable to you hereunder to satisfy such amended minimum compensation. Such amendment and modification shall be effected by a notice in writing from us to you given at any time following the effective date of the legislation regarding such increased compensation. As used in this paragraph, "you" shall refer to each of you individually.

## COMPUTATION OF ROYALTIES

Royalties payable hereunder shall be computed at the applicable royalty rate on the basis of the suggested retail list price, less all taxes and union payments, in respect of 90% of Company's sales of all phonograph records embodying Artist's performances, except as hereinafter provided. The royalty with respect to all forms of pre-recorded tape shall be computed at three-quarters of the otherwise applicable rate.

Company's net sales of any record shall be determined on the basis of the number of copies of such record sold by Company and for which Company has been paid after all returns, rebates, credits, cancellations, exchanges, etc., and prior to final determination thereof Company may set up reasonable reserves therefore, not to exceed twenty (20%) percent of the total number of records sold in the two most recent accounting periods on a given royalty statement.

With respect to net sales (in disc and tape configurations) through normal retail channels outside of the United States via the usual distributors of Company's licensees (including records sold for export to licensees in any of such other countries), the royalty payable will be fifty (50%) percent of the otherwise applicable royalty were such records sold in the United States, or fifty (50%) of the amount actually received or credited to Company by such licensee, whichever shall be less. All such royalties shall be computed in the national currency of the country involved, and shall be paid at the same rate of exchange as Company was paid, net of all applicable taxes. In the event Company does not receive payment in the United States currency, Company may deposit Artist's royalties in such foreign currency to Artist's account and at Artist's expense, in such currency, in a depository selected by Company, and will notify Artist accordingly. Deposit as aforesaid of payments representing royalties applicable hereto shall satisfy Company's obligations hereunder for the sales to which such royalty payments are applicable.

With respect to royalties earned through sales by any licensee within the United States, the royalty payable will be fifty (50%) percent of the net amount actually received by or credited to Company by such licensee, and will be payable in the next accounting period after such payment has been so received or credited.

Company may at any time elect to utilize a different method of computing royalties from that specified above, so long as such method or methods are applicable to substantially all persons similarly engaged by Company, and provided that such method does not reduce the net monies due Artist.

As to records not consisting entirely of masters recorded hereunder, Artist's royalties otherwise payable hereunder shall be prorated on the basis of the number of masters recorded hereunder which are on such records compared to the total number of masters contained on such record, provided however that no royalty shall be payable in respect of such recordings which are intended for sale at a substantially lower price than regular albums ("Sampler albums"). As to masters embodying Artist's performances hereunder, together with the performances of another artist or artists, Artist's royalty

otherwise payable hereunder, and the recording costs otherwise chargeable to Artist with respect to such masters, shall be prorated on the basis of the number of royalty artists whose performances are on such masters.

Notwithstanding anything to the contrary contained herein; with respect to records sold via direct mail or through a mail order operation (including, without limitation, record club plans, records sold via television and/or radio advertisements through mail order or special retail outlets (so-called "K-Tel" packages) or any form of flat-fee licensing, the royalty shall be fifty (50%) percent of the net amount actually received by or credited to Company in connection with such sales.

With respect to mid-priced records, the royalty rate shall be three-fourths (3/4) of the otherwise applicable royalty rate (a mid-priced record shall mean a record whose suggested retail list price in the territory involved is more than 66-2/3% but not more than 80% of the normal suggested retail list price for records in such territory).

With respect to "E.P." records, the royalty rate shall be three-fourths of the otherwise applicable royalty rate applicable to records in album configuration (an E.P. record shall mean a 33 1/3 rpm disc record or the tape equivalent whose suggested retail list price in the territory involved is 80% or less of the normal suggested retail list price for albums in such territory and which has a playing time of approximately one-half or less of the normal playing time of records in album configuration.)

All recording costs incurred by Company hereunder (or Artist's proper proportionate share of such costs), and all advance payments made to Artist by Company under this agreement shall be charged against Artist's royalties hereunder, if and when earned. "Recording Costs" means all costs incurred by Company for and with respect to the production of masters, as distinguished from manufacturing and distribution costs, including, without limitation, the cost to Company of all instrumental musicians, vocalists, conductors, arrangers, orchestrators, copyists, engineers, producers, etc., including any union session fees payable to Artist, studio rental and charges, payments to a trustee or fund based on wages to the extent required by any agreement between Company and any labor organization or trustee, and all other costs and expenses incurred by Company in producing masters hereunder, from time to time, and which are customarily recognized as recording costs in the phonograph record industry, including studio hire, rehearsal costs, equipment rental, and any and all other such costs. Costs of any session which is delayed or cancelled because of Artist's unavailability shall, at Company's option, be allocated to recording costs of masters accepted by Company hereunder, or charged against any payments due Artist.

No royalties shall be payable in respect of (i) records furnished on a no-charge basis or sold for less than Company's posted wholesale list price to disc jockeys, publishers, employees of Company, motion picture companies, radio and television stations and other customary recipients of free, discounted or promotional records; (ii) records sold by Company or Company's licensees at close-out or cut-out prices or for scrap, or at less than Company's inventory cost; (iii) records (or fractions thereof) given

away or shipped under a sales program on a "no-charge" or "freebie"
basis or sold for 50% or less of Company's or Company's licensees' posted
wholesale list price, to distributors, subdistributors, dealers and others
as an inducement to purchase Artist's records whether or not such records
are intended for sale to third parties.

No royalties shall be payable to you on sales by any of our licensees
until payment on such sales has been received by us.  In the event such
licensees have made advances or guarantees to us in anticipation of such
sales, payment shall not be deemed to have been received by us for
purposes of this paragraph until such sales have been credited by our
licensees against such advances or guarantees.

No royalties shall be payable to Artist unless and until Company
is in a "recouped  position", i.e., Company has recouped from royalties
otherwise payable hereunder, in accordance with the Agreement, the advances
paid to Artist pursuant to this Agreement.  If, at Artist's request Company
makes payment to Artist or a third party designee of Artist of amounts
not provided for in the Agreement (which Company is in no way obligated
to do), such payments shall also be recoupable as aforesaid, unless
agreed to otherwise by Company in writing.  As used herein, Company's
"net royalties" or "net receipts" shall mean Company's royalties earned
by actual sales by Company or Company's licensees of records embodying
masters recorded hereunder, for which Company has been paid or otherwise
received a credit to Company's account, less Company's direct expenses
in respect of same, including, without limitation, costs of collection,
shipping, taxes, payments to any unions or guilds (or their trust funds),
etc. Sales by Company's licensees shall be deemed to have occurred during
the accounting period in which Company receives payment therefor.  "Net
sales" means the cumulative number of records sold by Company or Company's
affiliates to independent third parties, for which Company has been paid,
less records returned at any time for any reason, including at Company's
request, and less all credits, cancellations, exchanges, etc.  Prior to
final determination thereof, Company may withhold a reasonable reserve
against returns, etc.

Within 90 days after March 31 and September 30 of each year during
which applicable phonograph records are sold, Company will render a
statement of accrued royalties earned under the Agreement during the
preceding calendar half-year, less all amounts chargeable thereagainst
(including, to the extent lawful or as permitted hereunder, all or any
portion of any indebtedness then owing by Artist to Company) under the
Agreement.  Simultaneously with the rendering of its statement, Company
will pay Artist the net amount, if any, shown to be due thereon, less
any deductions of withholdings required by law or any union or guild
sales or regulations.  Artist shall be deemed to have consented to each
statement, and such statement shall become final and binding upon Artist
one year after the rendition thereof unless Artist renders specific written
objection thereto within such period; and if Company gives Artist written
notice that it denies the validity of the objection, unless suit is
instituted within 6 months of the date Company gives such notice.

Artist may designate a certified public accountant who may audit
Company's books and records concerning the distribution and sale of records
embodying the masters recorded hereunder.  Said examination shall be at Artist's
sale cost and expense, during normal business hours, and upon reasonable
notice, and may not be conducted more than once annually.  Such examination

shall be conditioned upon the accountant's agreement to Company that he will not voluntarily disclose any findings to pay person other than Artist, or Artist's attorney or other advisers, and that he is not being compensated on a contingent fee basis.

We shall have the option at any time during the initial term and during each option period (as specified in paragraph 2 herein) to elect to modify this Agreement by written notice to you so that you are guaranteed minimum compensation hereunder for the then current term and for each consecutive twelve (12) month period of the term thereafter, if any, at the rate of Six Thousand Dollars ($6,000) for each twelve (12) month period as follows: If we exercise our said option during any option period, we shall pay to you prior to the end of each such twelve (12) month period of the term hereof after the exercise of said option (including the twelve (12) month period in which said option is exercised) the difference between Six Thousand Dollars ($6,000) and the total of (i) the royalties earned by you hereunder during such twelve (12) month period; plus (ii) so much of the advances, if any, paid to you in such twelve (12) month period pursuant to this Agreement as remains unrecouped at the end of such period. If the option specified in this paragraph 13 is exercised during the initial term, as the same may be extended, then the guarantee payment which shall be made shall be computed by multiplying Six Thousand Dollars ($6,000) by a fraction, the numerator of which is the number of months including any fractions thereof of said initial term and the denominator of which is twelve (12) (hereinafter the "initial term guarantee"), and we shall pay you or cause you to be paid prior to the end of the initial term the difference between the initial term guarantee and the total of (i) the royalties earned by you hereunder during said initial term; plus (ii) so much of the advances, if any, paid to you in said initial term pursuant to this Agreement as remains unrecouped at the end of such period. All payments made to you pursuant to this paragraph 12 are deemed non-returnable advances against royalties payable to you hereunder or under any other agreement between you and us or our parent, subsidiary, affiliated or associated companies. In the event the minimum compensation of Six Thousand Dollars ($6,000) as set forth in the California Code of Civil Procedure §526 and California Civil Code §3423 is increased at any time during the term of this Agreement, and we have guaranteed you such minimum compensation as specified above, then at our sole option, this Agreement may be amended and modified so as to increase the amounts payable to you hereunder to satisfy such amended minimum compensation. Such amendment and modification shall be effected by a notice in writing from us to you given at any time following the effective date of the legislation regarding such increased compensation. As used in this paragraph, "you" shall refer to each of you individually.

# EXHIBIT B

Electronically FILED by Superior Court of California, County of Los Angeles on 03/25/2022 08:23 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk
Case 2:23-bk-10234-VK Claim 23 Filed 05/30/23 Entered 05/30/23 14:39:35 Desc
Main Document Page 58 of 64
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Carmen Tamzarian

1  **MARTORELL LAW APC**
   Eduardo Martorell, State Bar No. 240027
2  EMartorell@Martorell-Law.com
   Jean-Paul Le Clercq, State Bar No. 248818
3  JPLeclercq@Martorell-Law.com
   Playa District
4  6100 Center Drive, Suite 1130
   Los Angeles, California 90045
5  Telephone: (323) 840-1200
   Facsimile: (323) 840-1300
6
7  Attorneys for Plaintiff,
   LOUIS MAYORGA
8
9              **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10          **FOR THE LOS ANGELES, CENTRAL DISTRICT**

11 | LOUIS MAYORGA, an individual,                    | Case No.  22STCV10535
12 |          Plaintiff,                              | **COMPLAINT FOR DAMAGES FOR:**
13 |     v.                                           |   1. **Malicious Prosecution**
14 | LISA FANCHER, an individual doing business       | Demand for Jury Trial
   | as Frontier Records and American Lesion          |
15 | Music; MICHAEL B. ACKERMAN, Esq., an             |
   | individual; ALFRED ERIC BJORGUM, Esq.,           |
16 | an individual; and DOES 1 through 50,            |
   | inclusive,                                       |
17 |          Defendants.                             |
18
19
20
21
22
23
24
25
26
27
28

———————————————————————————————————————
                    COMPLAINT FOR DAMAGES

Plaintiff hereby complains and alleges against Defendants, and each of them, as follows:

**PARTIES**

1.     At all times mentioned herein and relevant hereto, Plaintiff LOUIS MAYORGA ("Mayorga") is, and was, an individual residing in the County of Los Angeles in the State of California.

2.     Defendant Lisa Fancher ("Fancher") is an individual doing business as Frontier Records and American Lesion Music, and is a resident of the State of California domiciled in the County of Los Angeles.

3.     Defendant Michael B. Ackerman, Esq. ("Ackerman") is an individual and at all relevant times herein mentioned was an attorney with California State Bar License Number 147735, who practices law in the State of California and the County of Los Angeles, and, upon information and belief, is a resident of the State of California domiciled in the County of Los Angeles.

4.     Defendant Alfred Eric Bjorgum, Esq. ("Bjorgum") is an individual and at all relevant times herein mentioned was an attorney with California State Bar License Number 198392, who practices law in the State of California and the County of Los Angeles, and, upon information and belief, is a resident of the State of California domiciled in the County of Los Angeles.

5.     Mayorga is ignorant of the true names and capacities of defendant Does 1 through 50 and, therefore, Mayorga sues Does 1 through 50 by such fictitious names pursuant to Code of Civil Procedure section 474.  Mayorga will amend this complaint to allege the true names and capacities of Does 1 through 50, and each of them, when Mayorga discovers that information.  Mayorga is informed and believes and on this basis alleges that Does 1 through 50, and each of them, is responsible for and proximately caused the occurrences and damages that Mayorga alleges in this Complaint.  Furthermore, Mayorga alleges that the DOE Defendants in this action committed the same or similar acts alleged as the named Defendants in this action.  Therefore, all acts alleged to have been committed by the named Defendants are also alleged to have been committed by the DOE Defendants.

COMPLAINT FOR DAMAGES

6.      At all times mentioned herein, each of the Defendants sued herein was the agent, servant, alter ego, employee, employer, master, principal and/or associate of each other and of his/her/its Co-Defendants, and, as such, was acting within the time, place, purpose, and scope of said agency, service, employment, partnership and/or association.

7.      At all times herein, unless the context clearly indicates otherwise, any allegations of conduct or claim for liability against one defendant shall be against all defendants.

8.      Any reference to "the Attorney Defendants" as used in this Complaint shall mean Ackerman, Bjorgum, and Does 1-50, and each of them, unless the context indicates otherwise.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction to hear this matter pursuant to California Code of Civil Procedure section 410.10 because the Defendants all do business in the State of California.

10.     Venue is proper in Los Angeles County because a substantial part of the acts alleged in this Complaint, and the damages suffered, occurred in this judicial district.

## STATEMENT OF FACTS

11.     Mayorga re-alleges and incorporates by reference all preceding paragraphs of this complaint, as through fully set forth herein.

12.     Mayorga filed a lawsuit against Defendant Fancher and the Attorney Defendants in the matter entitled *Louis Mayorga v. Lisa Fancher*, Los Angeles Superior Court Case Number BC643234 ("the Underlying Lawsuit") on December 8, 2016.

13.     The Underlying Lawsuit was filed by Louis Mayorga and alleged that he entered into publishing and recording agreements with Lisa Fancher, dba Frontier Records and dba American Lesion Music in which Fancher would be assigned and administer Mayorga's copyrights and royalties associated with his contribution to the album "Suicidal Tendencies" (the "Album") by the band, Suicidal Tendencies.  Fancher was named as a defendant in the Underlying Lawsuit. Mayorga alleged that Fancher wrongfully withheld royalties and failed to account to Mayorga for royalties relating to the Album, in breach of the recording agreements.  Mayorga sought monetary damages for these amounts from Fancher.

COMPLAINT FOR DAMAGES

14.     A Mandatory Settlement Conference took place within the Underlying Lawsuit.  An agreement was reached in principle, but was set to expire if Mayorga chose not to perform.  When Mayorga chose not to perform, the tentative agreement expired.

15.     Fancher and the Attorney Defendants argued the tentative agreement was binding and filed a motion to enforce the "settlement."  The Court in the Underlying Lawsuit disagreed and denied the motion.

16.     Despite this objective and final adjudication on the merits of the claimed enforceability of that agreement, Fancher and the Attorney Defendants filed a separate lawsuit for breach of the tentative "settlement" agreement, on August 12, 2019, entitled *Lisa Fancher v. Louis Mayorga*, Los Angeles Superior Court Case Number 19STCV28432 ("the Frivolous Lawsuit").

17.     Mayorga filed a demurrer to the original Complaint.  Defendants filed a First Amended Complaint, mooting the demurrer.  Mayorga filed a demurrer to the First Amended Complaint, which was heard on December 2, 2020.  On that date, the Court sustained the demurrer as to all causes of action, thereby demonstrating the lack of merit.  Defendants then conceded that the Frivolous Lawsuit lacked of merit, filing a Request for Dismissal on March 25, 2021, dismissing the entire case.

## FIRST CAUSE OF ACTION

## AGAINST ALL DEFENDANTS

### (Malicious Prosecution)

18.     Mayorga re-alleges and incorporates by reference all preceding paragraphs of this complaint as though fully set forth herein.

19.     As detailed within the foregoing, the Frivolous Lawsuit had no objective merit and no hope of succeeding. No reasonable person would have believed any claims included therein had reasonable grounds upon which to base a lawsuit.

20.     The Frivolous Lawsuit ended in Mayorga's favor after the Defendants dismissed it after three demurrers had been filed by Mayorga, with one being sustained in its totality, on the substantive merits, and the third pending for hearing.

4
COMPLAINT FOR DAMAGES

21.    The Frivolous Lawsuit was filed by Fancher and the Attorney Defendants to seek leverage against Mayorga in the Underlying Lawsuit, to seek evidence prohibited from being sought in the Underlying Lawsuit (due to discovery having closed), and was filed by the Defendants with a malicious intent to vex, annoy, and cost Mayorga further attorneys' fees.

22.    Mayorga suffered harm given Defendants' actions, including suffering unnecessary and costly attorneys' fees and costs, and suffering emotional distress as would be expected by one having to face a frivolous lawsuit.  .

23.    Defendants, and each of them, took the above-described actions with malice, oppression and/or reckless disregard for Mayorga's rights and well-being.  As a consequence, Mayorga is entitled to compensatory, restitutionary and punitive damages, in an amount to be determined at the time of the trial in this matter.

24.    As a direct and proximate result of the Attorney Defendants' breaches, failures and incompetent representation, Mayorga has been damaged in an amount to be proven at trial and in excess of the jurisdictional limits of this Court.

WHEREFORE, Mayorga prays for judgment against the Defendants, and each of them, as follows:

1.  For all special and consequential damages according to proof;

2.  For punitive and exemplary damages;

3.  For pre- and post-judgment interest;

4.  For costs of suit herein incurred;

5.  For such other and further relief as the Court deems just and proper.

Dated: March 25, 2022                    MARTORELL LAW APC


                                         By: _____

                                             Eduardo Martorell
                                             Attorneys for Plaintiff
                                             LOUIS MAYORGA

COMPLAINT FOR DAMAGES

## **DEMAND FOR JURY TRIAL**

Plaintiff Louis Mayorga hereby demands trial by jury in this matter.

Dated: March 25, 2022                    MARTORELL LAW APC

By: _____

                                                    Eduardo Martorell
                                                    Attorneys for Plaintiff
                                                    LOUIS MAYORGA

COMPLAINT FOR DAMAGES

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11766 Wilshire Boulevard, Suite 450, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled: **NOTICE OF OBJECTION TO CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 05/31/2023   , I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Elizabeth (SV) F Rojas (TR)     cacb_ecf_sv@ch13wla.com
James R Selth     jselth@wztslaw.com, jselth@yahoo.com;maraki@wztslaw.com;sfritz@wztslaw.com
United States Trustee (SV)     ustpregion16.wh.ecf@usdoj.gov

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) 05/31/2023   , I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Louis Mayorga
611 Sunset Ave., Apt. 1
Venice CA 90291-2732

Edward Martorell
6100 Center Dr., Suite 1130
Los Angeles, CA 90045

Hon. Victoria S. Kaufman
United States Bankruptcy Court
21041 Burbank Blvd., Suite 354
Woodland Hills, CA 91367

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

05/31/2023     Yerika Ramirez                               /s/ Yerika Ramirez
*Date*              *Printed Name*                              *Signature*

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.